**In re the MARRIAGE OF Mylene THOMAS and Charles James Thomas.**

**Upon the Petition of Mylene Thomas, Appellant,**

**And Concerning Charles James Thomas, Appellee.**

No. 66078.

Supreme Court of Iowa.

May 19, 1982.

James Ellefson of Lundy, Butler & Lundy, Eldora, for appellant.

Charles F. Fairall of Fairall, Fairall, Reeves & Kaplan, Marshalltown, for appellee.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, LARSON, and SCHULTZ, JJ.

HARRIS, Justice.

An Iowa statute, enacted in 1977, specifies in considerable detail the criteria to be considered by a trial court in dividing property in dissolution of marriage cases. § 598.21, The Code 1981. One provision of this statute addresses property which a party inherited or received as a gift prior to or during the marriage. Such property ". . . is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." § 598.21(2).

We think this is substantially a codification of principles we had established by case law. *In re Marriage of Moffatt*, 279 N.W.2d 15, 20 (Iowa 1979); *Locke v. Locke*, 246 N.W.2d 246, 252 (Iowa 1976); *In re Marriage of Beeh*, 214 N.W.2d 170, 175 (Iowa 1974). These cases and the newer statute, alike, start with the premise that the property is not subject to division; but the premise yields where its application would be unjust.

In fixing the property division here the trial court set aside to the respondent his $98,000 interest in real estate which was thought to have been acquired by gift or inheritance. The remaining property was then divided, approximately $27,000 to petitioner and $25,000 to respondent. Petitioner was allowed modest alimony. Appeals by both parties raise questions about the effect of § 598.21(2). We modify and affirm.

I. There is a dispute about how respondent acquired his interest in the realty.

Petitioner argues it was purchased. On our de novo review we agree with respondent and the trial court that it was acquired by gift and inheritance.

Respondent's grandfather, M. H. Thomas, died testate in 1942 survived by his wife, Carrie, and three children. He devised a life estate in the farm property in question to his wife with remainder in his three children: Clarence (respondent's father), Grace, and Jesselene. Clarence died in 1957 survived by his wife, S. Elizabeth, and two children, Jane and respondent. At that time respondent and his sister assigned their interest in the property to their mother. In 1976 respondent's grandmother, Carrie, died leaving her daughters, Grace and Jesselene, and her daughter-in-law, S. Elizabeth (respondent's mother), one-third interest each in her estate. This estate of course included the property in question.

Soon thereafter S. Elizabeth decided to obtain Grace's and Jesselene's interest in the property. So she and her children, Jane and respondent, were parties to a purchase agreement and co-signers of a mortgage financing agreement. Neither respondent nor Jane paid any consideration in the process. By this transaction S. Elizabeth and the two children shared equally in the acquired two-thirds interest in the farm (each had two-ninths interest). At about the same time S. Elizabeth also decided to share equally with her children the one-third interest in the farm which she owned initially, giving each child an additional one-ninth interest. As a result respondent owns one-third interest in the property, one-ninth from his mother's original interest and two-ninths from his mother's purchase of Grace's and Jesselene's interest.

Respondent and petitioner lived on the farm from 1963 until the breakup of their marriage. They made improvements on the property and paid some taxes, though at no time did they make any payments on the mortgage nor pay any rent to occupy the property. Although the petitioner contends otherwise the trial court found, and we agree, that respondent's interest in the farm was acquired by inheritance or gift and hence is subject to section 598.21(2).

■ II. As noted, the requirement to set aside to a party the property which has thus been inherited or received as a gift is not absolute. Division may nevertheless occur to avoid injustice. A number of factors might bear on a claim that property should be divided under this exception. These include:

(1) contributions of the parties toward the property, its care, preservation or improvement;

(2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;

(3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;

(4) any special needs of either party;

(5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

Other matters, such as the length of the marriage or the length of time the property was held after it was devised or given, though not independent factors, may indirectly bear on the question for their effect on the listed factors. Still other matters might tend to negative or mitigate against the appropriateness of dividing the property under a claim that it falls within the exception.

When the parties were married in 1955 the petitioner was a school teacher and the respondent was a college student. Petitioner continued to teach until the spring of 1961. Respondent graduated from college in 1958. In December of 1962 the parties moved to Marshall County, and in January 1963 moved to the farm in which respondent's interest has been described. In 1964 petitioner began employment with a publishing firm. Her primary work has been a district manager, a position in which she supervised as many as fifty-two salespersons.

Shortly after the move to Marshall County the respondent started working for a manufacturing company where he is presently an industrial engineer. Since the parties moved back to the farm the respondent has managed it, or operated it, and has shared the income with his mother, two-thirds of the income going to respondent's mother, and one-third to respondent.

In 1968 the petitioner resumed her teaching career and continues in that capacity. From her earnings the petitioner paid not only her personal and family expenses but also contributed to the improvement of the home on the family farm. The trial court noted, and we agree, that, notwithstanding a career outside the home for seventeen years, the petitioner has nevertheless assumed the major portion of the household duties.

The parties' daughter graduated from high school in 1980 and is a college student. A part of her educational expenses are covered by tuition scholarships and grants. A foster son was placed in the parties' home in 1970 by the department of social services. The parties were partially reimbursed for the cost of this placement. The child is of limited ability and at the time of the trial was enrolled in a technical school. We agree with the finding of the trial court that a fund derived from these reimbursement expenses for the foster son, though in the name of respondent and the foster son, belong to the foster son alone.

It would unnecessarily extend this opinion, and would yield nothing of precedential value, to detail the trial court's division of personal property of the parties. We have examined the listing of those assets and, on our de novo review, subscribe entirely to the trial court's division and awards. As mentioned, the petitioner was awarded personal property totaling $32,225.22 and assigned debts totaling $5257 leaving petitioner with a net equity of $26,968.22. Respondent was awarded personal and the real property totaling $131,989.66 and was assigned debts of $8654 for a net award of $123,335.66. Approximately $98,000 of the respondent's award was from the real property.

III. Applying the factors described in the foregoing division, we also come down with the trial court's plan which left the interest in the family farm with the respondent. Some of the factors, such as petitioner's contributions to the improvement to the farm home, and her extensive contributions to family income, mitigate toward division of the farm interest. On the other hand, petitioner is obviously well qualified to fend and care for herself. She has no special needs. On balance, we agree with the trial court that we should give way to the thrust of the statute and not to its exception.

Justice seems to us to demand an award of permanent alimony although petitioner's abilities would ordinarily make this seem unlikely. But, in order to adjust for her contributions toward the farm, we agree with the trial court that permanent alimony should be allowed.

Respondent protests against the allowance of permanent alimony in the belief it subverts the statute's aim and in practical effect allows the nonowning spouse to share in the property inherited or given. We reject the argument in the belief that nothing in the statute prohibits a consideration of ownership of property acquired by gift or inheritance, along with the earning capacity or anything else which might relate to an ability to pay, in determining whether alimony should be allowed. Petitioner has not only his earning capacity but also an interest in the family farm. The fact that the farm is his, and is to a limited extent excluded from division, does not in any way prevent its being considered on the question of alimony.

Upon our de novo review our only disagreement with the trial court is in the amount of alimony ordered. Whereas the trial court fixed that amount at $125 per month we believe the amount should be $250 per month. Costs on appeal are taxed to respondent. Respondent is directed to pay $750 toward petitioner's fees and expenses on appeal. As modified the judgment of the trial court is affirmed.

MODIFIED AND AFFIRMED.