# IN THE COURT OF APPEALS OF IOWA

No. 13-0776
Filed April 30, 2014

IN RE THE MARRIAGE OF AMANDA KREUDER
AND RODNEY FOSTER

Upon the Petition of
**AMANDA KREUDER,**
     Petitioner-Appellee/Cross-Appellant,

**And Concerning**
**RODNEY FOSTER,**
     Respondent-Appellant/Cross-Appellee.
_____

     Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

     A husband appeals and a wife cross-appeals the provisions of the decree dissolving their marriage. **AFFIRMED.**

     Jacob Mason of Mason, Bushell & Associates, Des Moines, for appellant/cross-appellee.

     Patrick H. Payton of Patrick H. Payton & Associates, P.C., Des Moines, for appellee/cross-appellant.

     Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**VOGEL, P.J.**

Rodney Foster appeals the decree dissolving his common law marriage to Amanda Kreuder, asserting the trial court should not have awarded spousal support to Amanda, the court placed an incorrect value on the marital home, and the court should not have ordered him to pay one-half of any equity in the home to Amanda. Amanda cross-appeals asserting the trial court abused its discretion in not awarding her trial attorney fees. She also seeks an award of appellate attorney fees. Finding that equity was achieved with the district court's resolution of the issues, we affirm.

**I. Background Facts and Proceedings.**

The parties agreed they were common law married in Colorado before moving to Iowa in 2006. At the time of trial, Rodney was thirty-nine years old and worked as a brake and switch man for the Union Pacific Railroad. He received his high school diploma, but he has not completed any post-secondary education. His income fluctuated in the past several years from a low of $42,434 in 2009 to a high of $77,482 in 2011. In 2012, he earned approximately $64,000.[1] He testified the fluctuation in his pay occurs based on the type of work he does, the location of the work, and the amount of overtime he is required to perform.

Amanda was thirty-four years old at the time of trial and worked for the Mercy Clinic, having completed a Bachelor of Arts degree at Mount St. Clare,

---

[1] A review of Rodney's paychecks for year-end 2012 indicates gross earnings of $64,130.34.

now Ashford University. The 2011 tax return showed she earned just over $30,000.

The parties have no children. The only issues at trial were the property valuation, distribution, and spousal support. They own a house in Ankeny. Amanda placed a value on the house of $205,000, based on her memory of a 2010 appraisal that was done when the home was refinanced. Rodney claimed the house had a market value close to the 2011 assessed valuation of $183,800. Rodney testified there remained an outstanding balance on the note of $178,750. While Amanda's name was on the deed to the house, it was not on the note or mortgage instrument.

Amanda's mother passed away in 2008, and the distribution Amanda received from the estate was maintained by her in a separate savings account. From time to time, Amanda would transfer money from this account into the joint checking account to pay for purchases such as vehicles, to pay credit card debt, and to pay for home improvement projects. According to Amanda the improvement projects on the home included the installation of a swimming pool, privacy fence, new windows, a deck, a shed, trim work, and new vanities in the bathrooms. They also painted the exterior of the house, along with some interior painting. She testified she spent a total of $115,000 out of her inheritance savings account and only $30,000 remained.

In its decree of dissolution, the district court placed a value on the marital home at $205,000, in accordance with Amanda's testimony regarding the 2010 appraisal. It awarded the home to Rodney but ordered 50% of the equity in the home to be paid to Amanda upon the sale or refinance of the home. It divided

the vehicles between the parties and ordered Rodney to pay a total of $34,000 to Amanda "as either reimbursement for inherited property and/or to equalize the division of property." Included in this cash settlement were specific items all paid for with Amanda's inherited funds: $9000 for the 2010 Harley Davidson motorcycle awarded to Rodney, $5000 for payments made on Rodney's credit cards, $11,000 for major home improvements, and $9000 in living expenses. The court also found it equitable to award Amanda $600 per month in spousal support for five years. The court ordered Rodney's Tier 2 retirement account through the railroad to be divided using the *Benson* formula. *See In re Marriage of Benson*, 545 N.W.2d 252, 255-56 (Iowa 1996). In an order following a motion to amend and enlarge the decree, the court ordered Amanda's retirement to be divided under the *Benson* formula for the benefit of Rodney. It also placed a 180-day time-limit on Rodney to refinance or sell the marital home. Finally, the court ordered each party to pay their own attorney fees.

From this decision, Rodney appeals, and Amanda cross-appeals.

## II. Scope and Standard of Review.

As dissolution cases are heard in equity, our review is de novo. *See* Iowa R. App. P. 6.907. We give weight to the findings of the district court, especially its determinations of credibility, but we are not bound by them. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "We will disturb the district court's ruling only when there has been a failure to do equity." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) (citations and internal quotations marks omitted). Our review of the district court's decision with respect to the

award of attorney fees is for abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006).

## III. Spousal Support.

Rodney first challenges the district court's award of spousal support. He asserts both he and Amanda are relatively young and in good health. Amanda was awarded vehicles and her personal property in addition to a portion of his retirement benefits and credited her with $34,000 as a portion of her inheritance. While Rodney was awarded the martial home, he notes it comes with considerable mortgage debt. Rodney asserts he has no advanced education and a very specific set of skills that do not translate well to another career. He argues there is no evidence that Amanda needs retraining or further education as she already has a bachelor's degree and has worked continuously throughout their marriage. He asserts it is Amanda's spending habits that make it difficult for her to maintain her pre-dissolution standard of living because she routinely spends in excess of what she earns. He thus contends there is no reason why Amanda cannot support herself on the income she has.

Spousal support is an allowance to the former spouse in lieu of the legal obligation to support that person. *In re Marriage of O'Rourke*, 547 N.W.2d 864, 866 (Iowa Ct. App. 1996). In determining whether such an award is appropriate and how much the award should be, the court should consider the earning capacity of each party along with the present standard of living and ability to pay balanced against the relative needs of the other spouse. *Id.* We also consider the factors in Iowa Code section 598.21A (2011). An award of spousal support is not an absolute right but depends on the circumstances of each case. *In re*

*Marriage of Hazen*, 778 N.W.2d 55, 61 (Iowa Ct. App. 2009). "[I]f both parties are in reasonable health . . . they need to earn up to their capacities in order to pay their own present bills and not lean unduly on the other party for support." *Id.*

There are three types of spousal support: (1) traditional—is payable for life or so long as the spouse is incapable of self-support; (2) rehabilitative—is to support an economically dependent spouse through a limited period of retraining or re-education depending on the realistic needs of the dependent spouse with a goal of self-sufficiency; and (3) reimbursement—is to repay a spouse for the economic sacrifices made during the marriage that directly enhanced the future earning capacity of the other spouse. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540–41 (Iowa 2005). While the district court did not specifically identify the type of spousal support awarded in this case, its award of $600 per month for five years indicates the court was awarding rehabilitative support to provide for Amanda until such time as she could become self-supporting.

At trial, the evidence established that Rodney earned an annual salary that was double what Amanda earned. While Amanda obtained a four-year degree, there was no evidence that she was earning below her earning capacity. Rodney does not have post-secondary education, but he earns an excellent wage, and there is no indication this will change. The parties clearly lived above their means throughout at least the last several years of the marriage, though the record does not contain an indication of the current living expenses of either party.

It was discovered during the pendency of the dissolution action that Rodney married another woman, Kimberly, before this common-law marriage was dissolved. The new wife and her teenage son now reside with Rodney in the home Amanda and Rodney shared. It was clear from the testimony that Rodney contributed to the purchase of a new ring for Kimberly, they took a vacation together, and Rodney assists with supporting Kimberly and her son. While Rodney contends he is now saddled with the payments on the home, he testified at trial that Amanda's income was never used to pay on the note. He also has the opportunity to produce considerably more income if he is "borrowed out" to work another railroad that is short staffed as occurred in 2011.

Amanda testified she has lived with her brother and his family rent free since she moved out of the marital residence in February 2012. She asserted she struggles to pay her bills and her family helps her make payments on gas, groceries, and other items.

While we review a trial court's spousal support award de novo, "'we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity.'" *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005) (citing *In re Marriage of Spiegel*, 553 N.W.2d 309, 319 (Iowa 1996)). Considering the length of the marriage, the drastically different earning capacities of the parties, and the lack of income producing assets to support Amanda, we find the award of spousal support in this case equitable.

## IV. Property Distribution.

Next, Rodney challenges the property distribution of the dissolution decree. Specifically, he alleges the court assigned an incorrect market value to the marital home, and in light of his obligation to pay Amanda $11,000 for home improvements paid for with her inheritance, he claims he should not have to share the equity in the home with her.

With respect to the home value, Rodney points to the evidence he submitted at trial, the county assessor's valuation and a website of local home values, to support his valuation of the home at approximately $183,000. Amanda testified the house was worth $205,000 based on her memory of the appraisal of the house that was done in 2010 for a refinance. According to Amanda, this appraisal was done before some of the improvements to the house were made including the swimming pool and the deck. The appraisal was not admitted into evidence because Rodney, as the only debtor on the mortgage note, refused to obtain it from the bank despite discovery requests to do so. *See Haynes v. Dairyland Mut. Ins. Co.*, 199 N.W.2d 83, 85 (Iowa 1972) ("The burden of proving a factual issue, or at least the burden of going forward with the evidence on that issue should rest upon the party who has possession of facts or information lacking to the other."); *see also In re Marriage of Ales*, 592 N.W.2d 698, 703 (Iowa Ct. App. 1999) ("[A] person in possession of facts necessary to prove an issue, in this case economic need, should have the burden of proving those facts."). The court clearly believed Amanda's valuation of the home, and we defer to the judgment of the district court when the valuation is within the permissible range of evidence. *See In re Marriage of Driscoll*, 563 N.W.2d 640,

643 (Iowa 1997).  We accept the district court's $205,000 valuation of the marital home.

With the unpaid balance on the note of approximately $178,750, the house has an estimated equity of approximately $27,000.  The court ordered the house sold or refinanced within 180 days and the equity to be divided equally between the parties.  The court also ordered as part of the cash settlement award for Rodney to pay Amanda $11,000 "representing money spent by Amanda from her inheritance for home improvements."  Rodney asserts these orders essentially create a double recovery for Amanda.  Because any increase in the equity of the home can be tied to the home improvements, Rodney claims Amanda is receiving both a reimbursement for the money spent to improve the home and the corresponding market increase in the value.  He asks us to eliminate either provision.

Gifts and inherited property are not considered martial property and are not normally subject to division unless the court finds it inequitable to the other party not to divide the property.  *See* Iowa Code § 598.21(6) ("Property inherited by either party . . . is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable . . . .").  Rodney does not otherwise challenge several categories of purchases funded by Amanda's inheritance during the marriage, for which the court ordered him to reimburse Amanda, including a portion of the value of the Harley Davidson motorcycle, a portion of the money spent to pay off his credit cards, and a portion of the money spent to pay for living expenses.  However, he asserts that to require him to repay Amanda for a portion of what

was spent on the home improvements and then also to split the equity in the house with her is inequitable. Rodney also asserts he performed a majority of the work on the home improvement projects, though he acknowledges Amanda helped with some of the projects. He does not dispute that it was Amanda's inheritance that allowed the projects to go forward.

Because it was Amanda's substantial infusion of cash to the marriage, we agree with the district court's conclusion that Amanda should receive a credit for at least a portion of her inheritance. "On balance, we agree with the trial court that we should give way to the thrust of the statute and not to its exception." *In re Marriage of Thomas*, 319 N.W.2d 209, 212 (Iowa 1982). Moreover, the actual amount of equity in the home is unknown until such time as the house is refinanced or sold. If, as Rodney maintains, the home is valued or sold for much less than $205,000, there would be little or no equity, and therefore nothing to share with Amanda. We therefore affirm the district court's distribution assets.

## V. Attorney Fees.

**A. Trial Attorney Fees.** Amanda asserts the district court should have awarded her trial attorney fees in light of Rodney's failure to disclose assets, necessitating subpoenas to be generated; his failure to obtain the 2010 appraisal; and his attempts to hide his second marriage. She maintains his actions necessitated her to incur unnecessary attorney fees and he should be sanctioned for his misconduct.

An award of trial attorney fees rest in the district court's discretion, and we will only disturb that decision where we find the court abused that discretion. *Sullins*, 715 N.W.2d at 255. The trial court is to consider the respective abilities

of the parties to pay. *Id.* In light of the property settlement, the alimony award, and the reimbursement of the inheritance that Amanda spent during the marriage, we do not find the trial court abused its discretion in not awarding trial attorney fees in this case.

**B. Appellate Attorney Fees.** Amanda also seeks an award of appellate attorney fees.

> Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*Id.* (citations omitted). In light of the parties' earning capacities, the financial condition of the parties, and the relative merits of this appeal, we decline to award Amanda appellate attorney fees.

Costs on appeal assessed against Rodney.

**AFFIRMED.**