**IN THE COURT OF APPEALS OF IOWA**

No. 17-0438
Filed February 7, 2018

**IN RE THE MARRIAGE OF DIRK STERLING BARRETT
AND JAIME JO BARRETT**

**Upon the Petition of
DIRK STERLING BARRETT,**
        Petitioner-Appellant,

**And Concerning
JAIME JO BARRETT, n/k/a JAIME JO REITER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson,

Judge.


        Dirk Sterling Barrett appeals various provisions of the district court's

decree dissolving his marriage to Jaime Jo Barrett.  **AFFIRMED AS MODIFIED.**


        Dorothy L. Dakin of Kruse & Dakin, L.L.P., Boone, for appellant.

        Matthew T. E. Early of Fitzgibbons Law Firm, L.L.C., Estherville, for

appellee.


        Considered by Vogel, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

Dirk Sterling Barrett appeals various provisions of the district court's decree dissolving his marriage to Jaime Jo Barrett. With the exception of the distribution of some premarital items and a minor change to visitation and child support, the district court ruling is affirmed as modified.

## I. Background Facts and Proceedings

Dirk and Jaime were married in November 2008. The couple have one child, S.P.B., born in 2010. Jaime had another child from a previous relationship who was approximately sixteen years old and lived with the parties. During the marriage there were several incidents of violent or angry outbursts from Dirk. The district court also noted Jaime testified Dirk often threated to take S.P.B. if she did not "comply with his wishes."

On April, 26, 2016, after learning they would likely lose their home, the parties began arguing. The parties offer starkly contrasting versions of the event. Dirk testified they argued, and Jaime said she wanted a divorce. Dirk began to make dinner but Jaime, yelling and screaming at him, tripped and fell. He picked her up and guided her to the door, Jaime bit him, and he continued to guide her downstairs. He admitted he may have lightly punched her on the back during the events but denied he took her wallet or cell phone.

Jaime testified the parties began to argue and Dirk threw objects at her. She started videotaping his behavior with her cell phone. Dirk took the cell phone, and began to choke and punch her. He threw her onto the couch, pressed his forearm across her throat, and Jaime bit him. Dirk released her, and she ran to the neighbors' house to call the police.

Ankeny police arrived on the scene. Dirk refused the officers entry into the house. The officers asked Dirk if S.P.B. was the parties' child, and Dirk responded, "He's mine now." When the officers noticed Dirk was wearing an empty holster, he was patted down to ensure officer safety. Dirk told the officers he had removed the lug nuts from the parties' vehicles so Jaime could not leave with the children. The officers also found Jaime's wallet and cell phone on the floor of the living room. Dirk was arrested, and a criminal no-contact order was issued.

After the incident, Jaime moved from Ankeny to Estherville, started working as a nurse, and enrolled the children in school. After the parties physically separated, Jaime took items from the house, the exact number and description are contested by Dirk. Jaime claims she only took her bed, beds for the children, dressers for the children, two TV sets, her craft items, some cooking equipment, a few guns, and a push lawnmower. Dirk claims she took additional items, including heirlooms, guns she claims she does not possess, and furniture the parties owe a joint debt on.

During a custody exchange, Jaime requested officers from Webster City be present and informed them of the no-contact order. Dirk and his father were anything but mature adults at the time of the exchange. S.P.B. should not have been exposed to this behavior.

Dirk filed a petition for dissolution on May 13, 2016. Trial was held February 6 and 7, 2017. On February 17, the district court issued a decree of dissolution granting the parties joint legal custody of S.P.B., granting physical care to Jaime, providing visitation to Dirk, requiring Dirk to pay child support, and

dividing debts and property. No alimony was awarded. Dirk filed a notice of appeal March 17.

## II. Standard of Review

Equitable actions are reviewed de novo. Iowa R. App. P. 6.907. We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Because the district court is in a unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). While our review is de novo, the district court is given latitude to make determinations, which we will disturb only if equity has not been done. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

## III. Property Division

Dirk claims the district court awarded Dirk's premarital property, including heirlooms and firearms, to Jaime, inequitably assigned debt to Dirk, and created an inequitable balance in the value of the property awards. Dirk and Jaime presented conflicting evidence regarding the amount of household property taken by Jaime when she left the marital home.

### a. Heirlooms, Gifts, and Inheritance

Dirk claims the district court should have awarded him all seven of the items he describes as heirlooms, as they are inherited and gifted property, instead of the four items the district court ordered returned. Inherited property "is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of

the marriage." Iowa Code § 598.21(6) (2016). When considering if inherited or gifted property should be divided we must consider:

> (1) contributions of the parties toward the property, its care, preservation or improvements;
> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*In re Marriage of Muelhaupt*, 439 N.W.2d 656, 659 (Iowa 1989) (citing *In re Marriage of Thomas*, 319 N.W.2d 209, 211 (Iowa 1982)).

These factors are not exclusive and:

> Other matters, such as the length of the marriage . . . though not independent factors, may indirectly bear on the question for their effect on the listed factors. Still other matters might tend to negative or mitigate against the appropriateness of dividing the property under a claim that it falls within the exception.

*Thomas*, 319 N.W.2d at 211.

Dirk requested seven items: (1) his grandmother's engagement ring, (2) a wooden bookcase, (3) a chest of drawers, (4) two wooden twin sized captain's beds with mattresses, (5) wooden TV trays and rack, (6) a wooden rocking horse, and (7) a wooden toy box. On a document typed by Dirk titled "List of Property That I Need Returned" Jaime agreed to return the engagement ring, chest of drawers, TV trays and rack, rocking horse, and toy box. She stated she did not have the wooden bookcase and refused to return the captain's beds

saying, "No. No way to move, not allowing Dirk to enter [my] home." In the decree of dissolution the district court ordered:

> Each party shall keep the personal household property in their current possession with the exception of the following three items that were Dirk's inherited and gifted property prior to the marriage. Jaime shall return to Dirk: 1) Handmade wooden bookcase, 2) handmade wooden rocking horse, 3) Handmade wooden toy box, 4) Wooden twin sized captain's bed and replacement mattress.

The district court order shows a clear intent to award Dirk items he claims as family heirlooms or inherited property. There is no intent or explanation regarding the three items not included. Therefore, we award those additional items to Dirk and, to the extent Jaime has possession of any of the seven items, they should be returned to Dirk.

### b. Firearms

Jaime was awarded all the firearms obtained during their marriage. Dirk has a no-contact order resulting from the instance of domestic violence and is presently unable to possess any firearms. Dirk's father is a federally licensed firearm dealer, and the district court did note Dirk's interest in collecting firearms. Dirk describes the no-contact order as temporary, which is strictly true. However, the no-contact order currently in force will stay in place until September 2021.

Dirk claims Jaime is currently in possession of nearly $2000 worth of firearms obtained prior to the marriage. The district court's order only addressed firearms obtained during the marriage.

We find Dirk should be awarded his premarital firearms with the following serial numbers:

1. 96678071
2. 0471-67

3.     C12575
4.     189501454
5.     T845555
6.     MC0523320
7.     FL11940E
8.     002984
9.     145940
10.    7-48PFQ8811
11.    T35241
12.    A7804

We find this distribution is equitable, although the monetary value of the firearms is not equal as Jaime has already been awarded a large number of firearms. *See In re Marriage of Russell*, 473 N.W.2d 244, 246 (Iowa Ct. App. 1991). Because Dirk is currently barred from possessing firearms we require the firearms to be transferred to Dirk's father, Richard, until such a time as Dirk is legally able to possesses them.

### c. Furniture Debt

Dirk also claims the district court should not have awarded half of the debt owed to Nebraska Furniture Mart to him as Jaime was awarded all the furniture. Jaime claims much of the furniture, including a large sectional, desk, and hutch, were left in the marital home at the time of separation. The district court heard testimony from both parties regarding the disposition of the furniture and found it was equitable to divide the debt evenly. The district court was present during the testimony, and we will give weight to its findings. *See Brown*, 487 N.W.2d at 332. We see no reason to rule otherwise. Therefore, we affirm the division of the debt.

### d. Imbalance of Property Division

Dirk claims the district court's property division created a $40,000 imbalance in favor of Jaime. Property division issues are guided by Iowa Code section 598.21. Iowa does not require an equal division of property, but the division must be fair and equitable according to the specific circumstances of the dissolution. *Russell*, 473 N.W.2d at 246. The parties provided the district court with wildly different valuations of the property in each other's possession and after a thorough review of the record, we find the distribution of the district court is equitable.

## IV. Visitation

Dirk also claims the district court's visitation schedule is not in S.P.B.'s best interests. Dirk claims the district court should have granted him longer periods of visitation for Easter and Father's Day, visitation on S.P.B.'s birthday, and more than two non-consecutive weeks of visitation during the summer. Dirk additionally claims he should be granted visitation "when S.P.B. has a day off from school adjacent to one of Dirk's visitation weekends. Jaime argues Dirk has consistently displayed an uncontrolled temper, and therefore, the district court was justified in limiting visitation.

We have held the best interests of the child are served by granting the noncustodial parent liberal visitation. *In re Marriage of Riddle*, 500 N.W.2d 718, 720 (Iowa Ct. App. 1993). However, if liberal visitation would somehow harm the child, through physical abuse, instability, or some other means, it is not in the best interests of the child. *In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991).

### a. Easter, Father's Day, and Days Off School

Jaime lives approximately three hours from Dirk. Dirk claims the district court failed to consider the travel time when establishing visitation for Easter and Father's day. Easter visitation is Sunday from 8:00 a.m. to 5:00 p.m. on even years. This nine hour visitation requires approximately six hours of travel. Dirk claims the Easter visitation should begin Friday at 5:00 p.m. and end Easter Sunday at 5:00 p.m. Father's day visitation is scheduled from 5:00 p.m. the Saturday of Father's Day weekend to 5:00 p.m. Sunday. Likewise, Dirk claims visitation should begin 5:00 p.m. Friday and end 5:00 p.m. on Sunday. We agree, the nature of the drive creates an unhelpful period of visitation and is not in the best interests of S.P.B. Therefore, we modify the district court's order and grant Dirk's request as to Easter and Father's Day. However, we do not grant his additional request to be given days off of school adjacent to weekends in Dirk's care.

### b. S.P.B.'s Birthday

The district court used a standard chart to establish visitation for special events and holidays. The list of special events included S.P.B.'s birthday with visitation on odd numbered years to be with Dirk, and even numbered years with Jaime. However, the chart does not have the days of the week nor time noted as all other events do. We find Dirk should be granted visitation for S.P.B.'s birthday on odd numbered years on the weekend of the birthday or, if the birthday is on a weekday, the weekend immediately following from Friday at 5:00 p.m. to Sunday at 5:00 p.m.

### c. Summer Visitation

Agreeing with Jaime's request, the district court granted Dirk two non-consecutive weeks of visitation.  Dirk claims he should receive six weeks of consecutive visitation in order to make up for not receiving midweek visitation due to the distance between the parties.  We disagree.  The district court saw the demeanor of the parties first hand and heard testimony regarding the incidents of Dirk's anger, immaturity, and occasional violence.  We find such extended visitation is not in S.P.B.'s best interests.  We therefore affirm the summer visitation granted by the district court.

### V. Child Support

Dirk next claims the district court erred by assuming Dirk received the benefit of the child income tax deduction every year while ordering him to only take it every other year, miscalculating Jaime's income, and by following Jaime's child support worksheet exactly, resulting in a higher income assigned to him.

### a. Deduction

The district court ordered the parties to alternate claiming S.P.B. for tax purposes as long as child support is current.  However, a review of the record indicates the district court inadvertently calculated the child support applying the tax credit to Dirk every year.  We therefore reduce Dirk's child support by $20.50 per month. We affirm as modified, changing only the reduction in Dirk's child support obligation.

### b. Jaime's Income

Dirk also claims the district court should have imputed more income to Jaime.   Dirk  points  to  several  factors  to  increase  Jaime's  income:  craft

businesses, overtime, and historically higher earnings. Income from a second job that is "steady, not speculative and voluntary" should be included in a calculation of income. Overtime pay that does not appear "to be an anomaly or . . . uncertain or speculative" should be included in determining income. *Brown*, 487 N.W.2d at 333. The district court may also impute income to a party if that party is voluntarily underemployed. *In re Marriage of Dawson*, 467 N.W.2d 271, 275 (Iowa 1991).

We give the district court considerable latitude to make determinations and only disturb their ruling if equity has not been done. *Okland*, 699 N.W.2d at 263. We find the district court did equity by finding Jaime's craft businesses, selling soap and yarn at various farmer's markets, was both speculative and not steady. The district court explicitly found they were not "money makers" and at best covered her costs. Similarly, the record before us concerning the nature and regularity of Jaime's overtime is uncertain. We find the craft business and overtime should not be counted as income for purposes of determining child support.

Jaime previously made slightly more than $43,000 and included irregular overtime pay. Dirk claims her current income, a little less than $36,000, should be determined to be voluntary underemployment. We disagree. The job market in Estherville is significantly different than Jaime's previous employment. We find the district court's decision was equitable.

## VI. Attorney Fees

Finally, Jaime claims she should be awarded appellate attorney fees. "An award of attorney's fees is not a matter of right but rests within the discretion of

the court." *In re Marriage of Benson*, 545 N.W.2d 252, 258 (Iowa 1996).  We find

a grant of appellate attorney fees is inappropriate in this case.

**AFFIRMED AS MODIFIED.**