**Julie M. BOYLE, Appellant,**

v.

**ALUM–LINE, INC., Appellee.**

No. 04–0677.

Supreme Court of Iowa.

March 10, 2006.

Karl G. Knudson of Knudson Law Office, Decorah, Mark B. Anderson, Cresco, and James P. Moriarty of Moriarty Law Offices, P.C., Cresco, for appellant.

Donald H. Gloe of Miller, Pearson, Gloe, Burns, Beatty, Cowie & Shidler, P.L.C., Decorah, for appellee.

STREIT, Justice.

A welder claims she was sexually harassed by her fellow workers who could not get past her gender. Julie Boyle appeals the adverse verdicts in her sexual discrimination and retaliatory discharge claims brought under federal and state civil rights acts. Boyle contends the district court erred in three ways: (1) by denying her Iowa Civil Rights Act (ICRA) hostile-work-environment claim for sexual harassment in the workplace without determining and applying the proper standard of proof, (2) by improperly instructing the jury on the effect her "at-will" employment had on her employer's ability to terminate her employment, and (3) by denying her ICRA claim for retaliatory discharge without making any factual find-

ings. Because we find there was not substantial evidence to support the trial court's decision regarding the ICRA hostile-work-environment claim, the jury instruction was improper, and the court failed to apply a correct legal analysis to the retaliatory discharge claim, we reverse and remand with instructions for further proceedings.

## I. Facts and Prior Proceedings

Alum–Line, Inc. hired Boyle in August of 2001 to work as a welder. Alum–Line is an Iowa corporation with three plants engaged in the manufacture of trailers and related items. Boyle worked briefly at one plant, but was transferred two months later to a different plant. Boyle was the only female worker in the second plant. Her foreman's name was Wayne Hansmeier. Hansmeier was supervised by the plant manager, Chris Orr. Boyle and Hansmeier worked on the production floor, while Orr worked in an office overlooking the production floor. Orr's supervisor was Gary Gooder, the president of Alum–Line.

Boyle claims she was subjected to numerous incidences of sexual harassment while working at this plant. She claims she was routinely subjected to pornographic and demeaning images of women—some of which depicted women performing sexual acts with beer cans and animals. Many times, when she laid on her back to work underneath a trailer, one coworker would yell comments about her being in a "promotable position." Also, a fellow coworker once shined a flashlight on her chest and said "I can warm those for you." Boyle claims she reported the flashlight incident to Orr, but he declined to do anything about it. Boyle again complained to Orr when Hansmeier responded to a question from Boyle with harsh profanity. Orr responded to this complaint by reprimanding both Hansmeier and Boyle. Weeks later, Boyle claims she went to Gooder to complain after a coworker put

his hand down her blouse. Gooder allegedly sent her to Orr. Boyle claims Orr's only response to her complaint was "We've had some complaints and I'm investigating." Gooder and Orr claim Boyle never made any complaints about sexual harassment. The only complaint they acknowledge pertained to the incident involving harsh language.

On April 23, 2002, approximately one week after Boyle allegedly complained about her coworker putting his hand down her blouse, Gooder and Orr told Boyle her employment was terminated. Gooder and Orr said she was terminated because her coworkers had complained they were uncomfortable working with her because *she* was sexually harassing *them.*

In 2003, Boyle filed a petition seeking damages under the ICRA and under Title VII of the Civil Rights Act of 1964. The petition contained four distinct claims: (1) sexual discrimination through a hostile work environment under the ICRA, (2) retaliatory discharge under the ICRA, (3) sexual discrimination through a hostile work environment under Title VII, and (4) retaliatory discharge under Title VII. Pursuant to the law at the time of the case, the federal claims were tried to a jury while the state claims were simultaneously tried to the district court. *See Smith v. ADM Feed Corp.,* 456 N.W.2d 378, 380 (Iowa 1990) (holding there is no right to a jury trial under the ICRA), *overruled by McElroy v. State,* 703 N.W.2d 385 (Iowa 2005).

Boyle proposed a retaliatory discharge jury instruction, but the court ultimately did not instruct the jury on this issue. Boyle did not object to the court omitting the instruction. However, Boyle did object to the court's jury instruction which stated Alum–Line had the right to discharge Boyle "for any reason." The court

overruled this objection and gave the instruction to the jury.

In a special verdict, the jury concluded there was a hostile work environment, but also determined Alum–Line took steps reasonably calculated to stop the sexual harassment. Based on this finding, the district court entered judgment for Alum–Line on the Title VII hostile-work-environment claim. The court made identical findings of fact and entered judgment denying Boyle's ICRA hostile-work-environment claim. The court pointedly refrained from making any findings as to her ICRA retaliatory discharge claim. Not having been instructed on such a claim, the jury did not make any findings on the Title VII retaliatory discharge claim.

Boyle filed post-trial motions requesting, among other things, the court amend its decision on the Iowa Civil Rights Act claim to find Alum–Line did not take steps reasonably calculated to end the sexual harassment, and Alum–Line discharged the plaintiff in retaliation for lodging her last complaint of sexual harassment.

The district court denied all of Boyle's motions and stated its "findings of fact are supported by substantial evidence in the record and are consistent with the jury's factual findings [on the federal claim]."

Boyle filed an appeal contending the district court erred in three ways. First, it erred in denying her ICRA hostile-work-environment claim without determining and applying the proper standard of proof.[1] Second, it erred in instructing the jury on the effect her at-will employment had on Alum–Line's ability to terminate her employment. Third, it erred by not making any factual findings when it denied her ICRA claim for retaliatory discharge.

The court of appeals reversed and remanded to the district court for retrial solely on Boyle's Title VII claim of sexual discrimination through a hostile work environment. It affirmed the judgment of the district court on all other issues. We granted further review.

## II. The Merits

### A. Iowa Civil Rights Act Hostile–Work–Environment Claim

■ In *Farmland Foods v. Dubuque Human Rights Commission,* we set forth the elements of an ICRA hostile-work-environment claim:

> To establish a hostile work environment, the plaintiff must show: (1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment. Additionally, if the harassment is perpetrated by a nonsupervisory employee, the plaintiff must show the employer knew or should have known of the harassment and failed to take proper remedial action.

672 N.W.2d 733, 744 (Iowa 2003) (internal quotations and citations omitted). The district court entered findings of fact which established that Boyle was subjected to a hostile work environment. The court determined:

> [Boyle] was subjected to sexual harassment by her co-worker's offensive sexual language and conduct at work.... The conduct by [Boyle's] co-workers was based on her gender.... The conduct by [Boyle's] co-workers was directed to [Boyle] and was unwelcome and uninvited.... The conduct was sufficiently severe or pervasive so that a reasonable

---

1. Having waived any claim of error based on the trial court's failure to instruct on her Title VII retaliatory discharge claim, Boyle does not contend she should have the opportunity to relitigate this matter. She has therefore abandoned any opportunity to retry this issue.

person would find [Boyle's] work environment to be hostile.... [Alum–Line] knew of the sexual harassment....

However, the court found Boyle failed to prove all of the elements of a claim for sexual harassment in the workplace because Alum–Line "did take steps reasonably calculated to stop the sexual harassment." Boyle argues there was insufficient evidence to support the finding that Alum–Line took steps reasonably calculated to stop the sexual harassment.

▅▅▅ Our review of claims tried to the district court under the ICRA is for correction of errors at law. *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995) ("Our review of discrimination claims tried to the court is at law."). The district court's findings of fact are entitled to the weight of a special verdict and are binding on appeal if supported by substantial evidence. *Lynch v. City of Des Moines*, 454 N.W.2d 827, 829 (Iowa 1990). If there is no substantial evidence to support a finding upon which the lower court arrives at a challenged conclusion of law, the finding is not binding on this court. *Offermann v. Dickinson*, 175 N.W.2d 423, 426 (Iowa 1970).

Before we analyze the disputed finding of fact, we first analyze the court's conclusion that "a reasonable person would find [Boyle's] work environment to be hostile." Throughout trial, Alum–Line contended Boyle only made one complaint which conceivably related to sexual harassment. This one complaint related to an argument between Boyle and Hansmeier over blueprint measurements on a trailer. Boyle complained to Orr when Hansmeier told her to "look at the f* * *ing plan." Alum–Line argues this one instance led to the judge's conclusion that Boyle was subjected to a hostile work environment.

▅▅▅ This argument is not consistent with the court's actual findings. First of all, the heated exchange between Boyle and Hansmeier involved only one coworker while the court's finding of fact repeatedly refers to the harassers as "co-workers." Second, this single incident was insufficient to find conduct sufficiently severe or pervasive so that a reasonable person would find the plaintiff's work environment to be hostile. To establish the harassment was severe or pervasive, Boyle had to show she subjectively perceived the conduct as abusive and that a reasonable person would also have found the conduct to be abusive or hostile. *Farmland Foods*, 672 N.W.2d at 744. Also, because "hostile-work-environment claims by their nature involve ongoing and repeated conduct, not isolated events," the court had to find there was more than just one instance of inappropriate conduct. *Id.* at 745. Boyle's sole complaint regarding the confrontation with Hansmeier does not satisfy either of these tests. Because the court found there was a hostile work environment, we conclude the court determined Boyle was subjected to other instances of offensive sexual language and conduct at Alum–Line.

▅▅▅ We next focus our attention on the last two findings of fact—"[t]he defendant knew of the sexual harassment," and "[t]he defendant did take steps reasonably calculated to stop the sexual harassment." Orr stated he only received one complaint from Boyle concerning a hostile work environment. That complaint pertained to the incident when Hansmeier told Boyle to "look at the f* * *ing plan." Both Hansmeier and Boyle were reprimanded over the incident. Beyond this reprimand, Alum–Line took no others steps to curtail sexual harassment in the workplace while Boyle worked for Alum–Line.[2] Indeed,

2. Months after Boyle was terminated, Alum–Line's workers viewed a presentation on sexu-

al harassment, but there were no presenta-

the crux of Alum–Line's defense was that Boyle did not notify either Gooder or Orr that she was being sexually harassed, but if she had, Alum–Line would have taken such a complaint seriously and investigated it thoroughly.

When comparing these factual findings, we cannot find substantial evidence to support the court's finding that Alum–Line took "steps" reasonably calculated to stop the sexual harassment. One reprimand by Orr over an isolated incident is not substantial evidence to support a finding that Alum–Line took steps to stop the "severe or pervasive" sexual harassment. Because there was not substantial evidence to support a finding that Alum–Line took remedial action to stop the sexual harassment, we necessarily conclude, as a matter of law, that Alum–Line failed to implement prompt and appropriate corrective action once it knew of the sexual harassment.

The district court's remaining factual findings support a judgment for Boyle under the elements of an ICRA hostile-work-environment claim. *See generally Novak Equip., Inc. v. Hartl,* 168 N.W.2d 924, 927 (Iowa 1969) (stating a finding of insufficient evidence to support the court's judgment on one factual finding entitles the appellant to a reversal for entry of judgment in the appellant's favor unless there were issues presented but not decided by the court). Upon remand, the district court shall enter judgment in favor of Boyle on her ICRA hostile-work-environment claim. The court shall then determine damages based upon the existing trial record.

### B. Title VII Hostile–Work–Environment Claim

■ Boyle brought a simultaneous hostile-work-environment claim under Title VII. *McElroy v. State,* 637 N.W.2d 488, 499 (Iowa 2001) (hereinafter *McElroy I* ).

To establish the Title VII hostile-work-environment claim, Boyle had to prove to a jury the same elements as those set forth in the ICRA hostile-work-environment claim: (1) she was a member of a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition, or privilege of her employment. *Beard v. Flying J, Inc.,* 266 F.3d 792, 797–98 (8th Cir.2001). If the harassment was perpetrated by a nonsupervisory employee, she had to additionally show Alum–Line "knew or should have known of the harassment and failed to take proper remedial action." *See Stuart v. Gen. Motors Corp.,* 217 F.3d 621, 631 (8th Cir.2000).

The jury was not asked to determine generally whether Boyle proved her Title VII hostile-work-environment claim; instead, the jury was only instructed to enter written findings on predetermined issues in the case. The jury made the following findings: (1) Boyle was subjected to sexual harassment by offensive sexual language and conduct, (2) the conduct was based on gender, (3) the conduct was directed at her and was unwelcome and uninvited, (4) the conduct was sufficiently severe or pervasive so that a reasonable person would find Boyle's work environment to be hostile, (5) Alum–Line knew of the sexual harassment, and (6) Boyle did not prove Alum–Line failed to take steps reasonably calculated to stop the sexual harassment.

Boyle contends the jury's sixth finding was a result of an improper jury instruction.

■ We review alleged errors in jury instructions for correction of errors at law. *State v. Anderson,* 636 N.W.2d 26, 30 (Iowa 2001); Iowa R.App. P. 6.4. A

tions given during her eight months of employment.

court's instructions to the jury "must convey the applicable law in such a way that the jury has a clear understanding of the issues it must decide." *Thompson v. City of Des Moines,* 564 N.W.2d 839, 846 (Iowa 1997). Reversal is generally required in cases where an instruction is confusing or conflicting. *McElroy I,* 637 N.W.2d at 500.

■■■ Boyle claims the district court erred when it gave, over her objection, instruction no. 17 to the jury. Jury instruction no. 17 stated:

The plaintiff was an employee at will with the defendant. This means that the employer had the right to terminate the plaintiff's employment at any time, for any reason, with or without just cause. Therefore, you need not decide whether the employer had just cause for terminating her employment. The mere fact that her employment was terminated does not establish her claim for damages.

Boyle claims this instruction is legally incorrect because it does not provide any exception to the rule that an at-will employee can be terminated for any reason. Boyle contends this jury instruction could have led the jury to conclude that Alum–Line's termination of Boyle's employment was a step reasonably calculated to stop the sexual harassment.

Jury instruction no. 17 was an inaccurate statement of the law because there are a number of exceptions to the at-will employee doctrine based on public policy and legislative enactment. For example, in *Borschel v. City of Perry,* 512 N.W.2d 565, 567 (Iowa 1994), we held

Discharge of an employee because of age, race, creed, color, sex, national origin, religion, or disability is an unfair employment practice. Remedies are provided employees who are discharged in violation of [the Iowa Civil Rights Act].

(Internal citations omitted.) Also, in *Springer v. Weeks & Leo Co.,* 429 N.W.2d 558, 560–61 (Iowa 1988), we stated,

We deem [the Iowa workers' compensation statute] to be a clear expression that it is the public policy of this state that an employee's right to seek ... compensation ... for work-related injuries should not be interfered with regardless of the terms of the contract of hire. To permit the type of retaliatory discharge which has been alleged in this case to go without a remedy would fly in the face of this policy.

■■■ We also conclude the improper jury instruction was prejudicial to Boyle. The jury's first five factual findings indicate Boyle was subjected to severe or pervasive sexual harassment in the form of sexual language and conduct. The jury's sixth finding indicates the jury somehow determined Alum–Line took steps reasonably calculated to stop the sexual harassment. But, as discussed above, beyond the one incident where Alum–Line reprimanded both Boyle and Hansmeier, Alum–Line took no steps to stop any sexual harassment because it claims it received no reports of sexual harassment from Boyle.

Because instruction no. 17 incorrectly states a person can be terminated for "any reason," there is a strong possibility the jury viewed Boyle's termination as a step taken by Alum–Line that was "reasonably calculated to stop the sexual harassment." It was no leap of logic to make this conclusion because Boyle's termination was certainly effective at ending the sexual harassment. Therefore, we strike the jury's sixth factual finding and reverse the trial court's judgment based upon that finding.

■■■ As discussed above, the district court's findings of fact support a judgment for Boyle under the elements of her ICRA

hostile-work-environment claim. Because the elements for the Title VII claim mirror the elements of the ICRA claim, we conclude, under the doctrine of res judicata, that the court must also find for Boyle on her Title VII hostile-work-environment claim. *See Heidemann v. Sweitzer*, 375 N.W.2d 665, 667 (Iowa 1985) ("Issue preclusion, one application of the broader concept of res judicata, prevents a party to a prior action from relitigating in a subsequent action an issue raised and resolved in the prior action."). Accordingly, the court shall enter judgment in favor of Boyle on her Title VII hostile-work-environment claim and enter damages in conformance with the damages determined by the court on the ICRA hostile-work-environment claim. *See* 50 C.J.S. *Judgments* § 772 (1997) ("Even though a plaintiff may have separate concurrent or successive rights of action arising out of the same transaction, he can have only one full satisfaction, which, when obtained, bars all further actions.").

### C. Iowa Civil Rights Act Retaliatory Discharge Claim

Boyle also contends the district court erred in denying her ICRA retaliatory discharge claim without making any factual findings regarding the claim.

 When the district court decided the ICRA retaliatory discharge claim, it explicitly refrained from making any findings as to whether Boyle's discharge "was in retaliation for her own complaint of harassment, because the court does not believe that it needs to resolve these fact questions to decide this part of the case." The court went on to make a conclusion of law that "there [was] no claim or cause of action for retaliatory discharge in this context." The court's statement that it did not need "to resolve these fact questions to decide this part of the case" indicates it likely determined the retaliatory claim was

moot because it found Boyle did not prove the hostile-work-environment claim. However, a retaliatory discharge claim under both the ICRA and Title VII requires that the plaintiff prove three elements, all of which are distinct from any claim for sexual harassment. To establish a prima facie case of retaliation under the ICRA, a plaintiff must show (1) he or she was engaged in statutorily protected activity, (2) the employer took adverse employment action against him or her, and (3) there was a causal connection between his or her participation in the protected activity and the adverse employment action taken. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004); *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 861–62 (Iowa 2001).

 Even though her hostile-work-environment claim failed in the original trial, Boyle still presented enough evidence to warrant a decision on her retaliatory discharge claim. First, Boyle exercised her right to complain about the instances of sexual harassment. *See Channon*, 629 N.W.2d at 865. Second, she suffered an adverse employment action when her superiors terminated her employment. Evidence supporting the third element, causal connection between the complaint and her discharge, was also tendered through circumstantial evidence—she was discharged for allegedly sexually harassing other employees one week after she complained that a coworker put his hand down her blouse. While mere coincidence of timing does not conclusively establish this element, the timing of the action, combined with all the other circumstances present in this case, entitles her to a ruling on her retaliatory discharge claim. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999) ("Generally, more than a temporal connection between the protected conduct and the adverse employment ac-

tion is required to present a genuine factual issue on retaliation.").

■ Even though Boyle presented this evidence at trial, Alum–Line contends Boyle "waived" her claim for retaliatory discharge. In essence, because Boyle waived the *Title VII* retaliatory discharge claim by not objecting when the court presented her with proposed jury instructions not addressing the claim, Alum–Line contends this waiver carried over to the ICRA claim.

■ We do not find Boyle waived her ICRA retaliatory discharge claim. Boyle clearly pled a retaliatory discharge claim under Title VII and the ICRA. She also presented evidence demonstrating she was eligible for relief for retaliatory discharge. When the district court held there was "no claim or cause of action for damages under Iowa law for retaliatory discharge in this context," Boyle filed a rule 1.904(2) motion asking the court to enlarge or amend its findings and conclusions on this claim.[3] The court did not address this issue in its post-trial order, but the issue was still adequately preserved for review on appeal.[4] As aptly stated in Boyle's appellate brief:

· No matter how badly a plaintiff's counsel errs in the jury instruction phase of a Title VII case tried simultaneously with an ICRA case, a plaintiff should be entitled to a correct decision of her ICRA case by an independent trial judge correctly applying Iowa law and

arriving at fact-findings based upon his [or her] own weighing of the evidence.

■ Alum–Line also argues Boyle waived her ICRA retaliatory claim during the following discussion with the court:

to the extent there are any matters related to the plaintiff's claim against the defendant that were not submitted to the jury that are required by Iowa law to be decided by the Trial Court without a jury, those matters will be submitted [tomorrow].

The next day the court said:

The court is making an opportunity available now to present whatever trial may be necessary and argument that may be necessary to submit the nonjury issues under state law for the court for decision incorporating by reference the evidence presented to the jury and supplementing the record with whatever other documents or arguments or anything else that counsel believe is necessary.

Boyle's attorneys indicated they did not wish to present any additional evidence or make any additional arguments, stating it was their belief the evidence and arguments presented to the jury were sufficient. Following Boyle's statements, Alum–Line made the following argument:

To me the only issue to be tried under Iowa law contains the same elements to prove hostile environment, sexual harassment, and that's the only issue that has been raised by the--by the evi-

---

**3.** The rule 1.904 motion requested, among other things, "that the Court amend its findings of fact to include a finding that the Defendant discharged the Plaintiff in retaliation for lodging her last complaint of sexual harassment with the Defendant."

**4.** When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal. *Meier v. Senecaut III*, 641 N.W.2d

532, 537 (Iowa 2002). A rule 1.904(2) motion is the proper method "to preserve error 'when the district court fails to resolve an issue, claim or other legal theory properly submitted for adjudication.'" *Id.* at 539 (quoting *Explore Info. Servs. v. Iowa Ct. Info. Sys.*, 636 N.W.2d 50, 57 (Iowa 2001)). In this instance Boyle's post-trial motion sufficiently alerted the district court to its omission, and therefore the error was preserved for our review.

dence. No other issue has been *raised by the evidence*. There isn't sufficient *evidence* to support any other type. *There's no retaliatory discharge issue raised.*

(Emphasis added.) Boyle was given an opportunity to respond to this argument, but declined. Alum–Line contends this brief discussion sufficiently waived Boyle's retaliatory claim.

We find no merit to Alum–Line's argument that Boyle waived her retaliatory claim by standing silent. Such a rule would require attorneys to waste precious court time repeating, ad nauseum, their entire case to the court whenever a judge asked "is there anything else?" Also, we find it plausible Boyle did not contradict Alum–Line's contention that there was no retaliatory discharge claim as she felt it was unnecessary because she had clearly pled the retaliation claim and presented evidence at trial to establish her case.[5] Also, it is clear, in context, that Alum–Line's statement that "[t]here's no retaliatory discharge issue raised" was an argument that the issue was not raised *by the evidence*. This was not a statement of issues for the court to rule upon that was agreed to by Boyle's non-response.

 The district court's conclusion of law that there was "no claim or cause of action for damages under Iowa law for retaliatory discharge in this context" was flawed. A court cannot determine there is no claim or cause of action for damages when it makes no findings concerning the elements of the plaintiff's case. *See Falczynski*, 533 N.W.2d at 234. This failure to apply a correct legal analysis to the claim is reversible error. *See id.* We therefore vacate the trial court's decision and remand for reconsideration so that the same district court judge can, on the existing trial record, make findings of fact, conclusions of law, and judgment on the ICRA retaliatory discharge claim. *See id.*

### III. Conclusion

The judgment on Boyle's ICRA retaliatory discharge claim is reversed and remanded so the same district court judge can issue further findings of fact, conclusions of law, and judgment on the existing trial record. On remand, the court shall also enter an order granting judgment to Boyle on her ICRA hostile-work-environment claim; enter an order granting judgment in favor of Boyle on her Title VII hostile-work-environment claim; and, based upon the existing trial record, determine damages.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS FOR FURTHER PROCEEDINGS.**

---

5. The present case can be contrasted with an open court colloquy where the defendant tells the court that the plaintiff has dropped a claim from the lawsuit. If the plaintiff had not decided to drop the claim, we would expect the plaintiff to correct the defendant's statement.