**IN THE COURT OF APPEALS OF IOWA**

No. 18-1817
Filed November 6, 2019

**OLIVER FENCEROY,**
        Plaintiff-Appellant,

**vs.**

**GELITA USA, INC., BOB KERSBERGEN, TOM HAIRE, JEFF TOLSMA, and JEREMY KNEIP,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.


        A plaintiff appeals the district court summary judgment dismissal of his claims of racial harassment, racial discrimination, and intentional infliction of emotional distress.  **AFFIRMED.**


        Jay Denne and Stanley E. Munger of Munger, Reinschmidt & Denne, L.L.P., Sioux City, for appellant.

        Ruth A. Horvatich, Aaron A. Clark, and Abigail M. Moland of McGrath North PC LLO, Omaha, Nebraska, for appellees.


        Heard by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

Oliver Fenceroy appeals the district court's granting of summary judgment in favor of defendants Gelita USA, Inc. (Gelita), Tom Haire, and Jeff Tolsma and dismissing his claims of racial harassment, racial discrimination, and intentional infliction of emotional distress. We find Fenceroy did not show Gelita had the requisite knowledge to support the harassment claims, did not establish an adverse employment action for his discrimination claim, and the evidence did not support a finding of severe emotional distress. We affirm.

### I.      Background Facts & Proceedings

Gelita is a corporation based out of Germany with a plant in Sergeant Bluff, Iowa, which produces gelatin products used in a variety of industries. Fenceroy, an African-American, began working for Gelita in 1975 and retired in March 2013. For the majority of his tenure at Gelita, Fenceroy was the only African-American employee in the plant.

Gelita's Code of Conduct provided to employees includes an anti-harassment policy as well as a reporting procedure. Fenceroy was also aware he had complaint procedures available to him through his union membership.

Gelita holds annual training sessions concerning harassment and discrimination, which Fenceroy acknowledged attending on at least three separate occasions. Jeff Tolsma, Gelita's current head of human resources, sent a memo to all employees in August 2010, explaining harassment was a serious offense that could lead to disciplinary action.

In October 2011, Fenceroy reported to human resources that a rope he believed was tied to resemble a noose was hanging in the plant where he worked.

Tolsma and the production manager for the plant, Jeremie Kneip, went to the factory and looked at the rope, determining the rope—which had a loop tied at the end—was used for a valid employment purpose to create pressure on a scale and the loop might be used as a handle. But, they ordered the rope to be untied and advised Fenceroy of their action. Fenceroy observed the rope was soon tied back into the loop by unknown persons in the factory. Tolsma and Kneip do not appear to have ordered the rope untied again. However, Fenceroy made no additional reports to human resources to complain of the "noose."

In 2012, Gelita sent out a "confidential" survey to all employees asking for suggested improvements or changes to the harassment policy. Fenceroy did not report any harassment through the survey.

After retiring from Gelita in 2013, Fenceroy filed a complaint with the Iowa Civil Rights Commission (ICRC). Fenceroy identified multiple occasions in 2012 when Gelita employees, including Tom Haire and Bob Kersbergen, made racially discriminatory or harassing comments; many of the comments were overtly white supremacist in nature or otherwise denigrated African-Americans. Kersbergen allegedly assaulted Fenceroy by grabbing and pulling him to the ground. Fenceroy alleges Kneip told him not to bother bringing complaints to human resources. Fenceroy stated the foremen did not take action when he complained or they witnessed the harassing comments. Fenceroy did not report any of the 2012 incidents to human resources when they occurred or at any time prior to his retirement. The ICRC issued Fenceroy a right-to-sue letter.

On May 30, 2014, Fenceroy filed suit against Gelita and employees Tolsma, Kneip, Kersbergen, and Haire, alleging violations of the Iowa Civil Rights Act (ICRA) and tortious infliction of emotional distress.

During the discovery process, the supreme court heard an interlocutory appeal, which examined the limits of the attorney–client privilege when a defendant relies on the attorney's investigation.[1] *Fenceroy v. Gelita USA, Inc.*, 908 N.W.2d 235, 238 (Iowa 2018) (deciding "whether plaintiff's counsel may depose defense counsel and obtain counsel's prelawsuit work product"). The district court's ruling denying a protective order for defense counsel's investigative notes was affirmed, and the case was remanded. *Id.* at 249.

On April 7, 2016, Gelita, Haire, and Tolsma filed a motion for summary judgment. Kersbergen did not join in the motion.[2] The motion was amended in February 2018, following the supreme court's ruling on the discovery issue. On September 21, the district court granted the motion for summary judgment, holding Gelita had established the *Faragher-Ellerth* affirmative defense[3] and was entitled to judgment as a matter of law. The court found Gelita had no notice of the harassing behavior and could not be held liable for negligent control of the work environment; Fenceroy had not established he suffered an adverse employment action in his racial-discrimination claim; and Fenceroy could not establish the defendants' conduct resulted in his suffering severe emotional distress.

---

[1] The case was stayed in district court during the pendency of the interlocutory appeal.

[2] Fenceroy's claims against Kersbergen are still outstanding.

[3] The *Faragher-Ellerth* affirmative defense is a "two-part defense [that] requires employers to show reasonable care was exercised to 'prevent and correct promptly any . . . harassing behavior' and to further show the claimant employee 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.'" *Fenceroy*, 908 N.W.2d at 242 (citations omitted).

Fenceroy's claims against Gelita, Haire, and Tolsma were dismissed with prejudice. Kneip was not formally served with Fenceroy's petition, and the court dismissed the claims against him without prejudice.

Fenceroy appeals the summary judgment ruling as to Gelita, Haire, and Tolsma. Fenceroy does not appeal Kneip's dismissal.

## II.     Standard of Review

"Appellate review of a grant of a motion for summary judgment is for errors at law." *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa 2004). Summary judgment is to be granted if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The court looks at the evidence in the light most favorable to the non-moving party and considers "every legitimate inference that can be reasonably deduced from the record." *Estate of Harris*, 679 N.W.2d at 677 (quoting *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001)).

## III.     Analysis

**A.     Supervisor harassment.** To establish a hostile-work-environment claim under the ICRA, a plaintiff must show: "(1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment." *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 746 (Iowa 2006) (quoting *Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 744 (Iowa 2003)).

An employer may be entitled to the *Faragher-Ellerth* affirmative defense to claims of vicarious liability for harassment by a supervisor that do not involve tangible employment action. *See Fenceroy*, 908 N.W.2d at 241–42. "[V]icarious liability does not replace the direct negligence theory of employer liability, but rather supplements the theory with an additional agency-based standard." *Id.* at 242. "Generally, if an employee fails to notify the employer of wrongdoing, courts have found that such failure, coupled with adequate preventative policies, is sufficient to prevail in the defense." *Id.* at 246.

The district court did not examine the underlying hostile-work-environment claim, but instead granted summary judgment based on the *Faragher-Ellerth* affirmative defense. The court found Gelita had valid anti-harassment policies in place and exercised reasonable care to prevent and correct harassment in the workplace. Fenceroy was aware he could file a grievance regarding harassment and discrimination. He filed only one grievance during his thirty-seven years of employment—in 2011—when he reported a rope looped into an apparent noose. Gelita investigated and took action on his grievance.

Fenceroy had internal procedures available and a union representative who could inform Gelita of alleged continuing harassing behaviors by coworkers and supervisors. He admitted to knowing and understanding that if his immediate supervisor or foreman was the problem, he was to report to an upper manager or human resources. He did not do so. Fenceroy made no further complaint nor did he take advantage of corrective opportunities offered to him until after he retired— a point at which Gelita had no opportunity to fix the problem with respect to Fenceroy. Fenceroy's decision to not pursue corrective actions before retirement

was not within the control of the employer. We conclude the district court did not err in determining Gelita is entitled to the *Faragher-Ellerth* defense.

**B.    Coworker harassment.**   When establishing a harassment claim against non-supervisors, the plaintiff must establish the employer was negligent in controlling working conditions. *Farmland Foods*, 672 N.W.2d at 744. To establish this claim, in addition to the four elements of a hostile work environment listed above, the plaintiff must show the employer "knew or should have known of the harassment and failed to take proper remedial action." *Id.* (citation omitted).

The district court ruled Fenceroy did not show Gelita "knew or should have known of the harassment and failed to take proper remedial action." *See id.*; *see also Boyle*, 710 N.W.2d at 746. The court found no evidence to suggest that employee harassment of Fenceroy "was so open and obvious that Gelita should have, on its own, discovered the harassment." Fenceroy did not notify Gelita of the continuing harassment, and Gelita took proper remedial action when Fenceroy filed his single complaint. Therefore, Fenceroy has failed to establish the final element of his harassment claim.

**C.    Discrimination.**   To establish a prima facie claim of racial discrimination, a plaintiff must show they are a member of a protected class, were performing the work satisfactorily, and suffered an adverse employment action. *Farmland Foods*, 672 N.W.2d at 741 n.1. "[A]n adverse employment action is 'an action that detrimentally affects the terms, conditions, or privileges of employment.'" *Haskenhoff v. Homeland Energy Sols., LLC*, 897 N.W.2d 553, 587 (Iowa 2017) (citation omitted). The question of "[w]hether an adverse employment action occurred 'normally depend[s] on the facts of each situation.'" *Id.* (citation

omitted). "[M]inor changes in working conditions that only amount to an inconvenience cannot support discrimination." *Farmland Foods*, 672 N.W.2d at 742.

Fenceroy claims Gelita constructively discharged him—that leaving the "noose" up in the factory meant Fenceroy had no choice but to quit his employment at Gelita. "Constructive discharge exists when the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Van Meter Indus. v. Mason City Human Rights Comm'n*, 675 N.W.2d 503, 511 (Iowa 2004) (citation omitted). "The test for constructive discharge is objective, evaluating whether a *reasonable person* in the employee's position would have been compelled to resign and whether an employee *reasonably believed* there was no possibility that an employer would respond fairly." *Haskenhoff*, 897 N.W.2d at 592. "[C]onditions will not be considered intolerable unless the employer has been given a reasonable chance to resolve the problem." *Van Meter Indus.*, 675 N.W.2d at 511.

The district court concluded Fenceroy "did not provide Gelita with a reasonable chance to work out any problems he was having while he worked for Gelita." The court also noted the extended timeframe between the 2011 reported incident and Fenceroy's 2013 retirement suggested Fenceroy did not find "his working conditions so intolerable that he must resign."

In August 2012, Fenceroy provided Gelita with six-month's notice of his intent to retire. He then extended his retirement date an additional month so he could qualify for full Social Security benefits at the time of his retirement. In his deposition, Fenceroy pinpointed the noose as "the last straw that broke the camel's

back." Fenceroy reported the noose in October 2011 and asserted the rope continued to be tied with the loop at the end until his retirement. He did not file a complaint or otherwise notify human resources and the company of the loop's continuing existence or of the comments and assaults occurring at work. He waited ten months after his complaint before submitting his retirement notice. He then remained on the job for an additional seven months after his notice of retirement.

Looking at the evidence in the light most favorable to Fenceroy, we find he has failed to allege sufficient facts to establish a constructive discharge. Fenceroy has failed to prove an adverse employment action and so has failed to establish a prima facie case of racial discrimination. The district court did not err in granting the motion for summary judgment on this claim.

**D.      Intentional infliction of emotional distress.** A successful claim of intentional infliction of emotional distress requires a plaintiff demonstrate four elements: "(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress." *Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 26 (Iowa 2014) (citation omitted). The district court determined Fenceroy's emotional distress did not rise to the level of "severe or extreme emotional distress," and consequently, the claim failed as a matter of law.

"Our cases that have found substantial evidence of emotional harm have had direct evidence of either physical symptoms of the distress or a clear showing

of a notably distressful mental reaction caused by the outrageous conduct." *Id.* at 30 (citation omitted). In *Smith*, our supreme court looked to the Restatement (Second) of Torts to distinguish between emotional distress—which "includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea"—and severe or extreme emotional distress that "is so severe that no reasonable man could be expected to endure it." 851 N.W.2d at 30 (quoting Restatement (Second) of Torts § 46 cmt. j, at 77–78).

Fenceroy's allegations of emotional distress included "fright, horror, shame, humiliation, embarrassment, anger, disappointment, and worry." The language tracks the terms listed in the Restatement for "emotional distress." But severe or extreme emotional distress is required. *See id.* Moreover, when comparing Fenceroy's emotional distress allegations to the cases discussed in *Smith*, evaluating sufficient evidence of severe emotional distress to go to the jury, Fenceroy's allegations of distress are akin to the cases where the emotional distress alleged was insufficient to reach the jury. *See id.* at 30–31 (collecting cases).[4] Fenceroy has not offered evidence of a physical manifestation or a debilitating mental or emotional reaction to his coworkers' conduct. We therefore affirm the district court's finding his claim for intentional infliction of emotional distress fails as a matter of law.

**AFFIRMED.**

---

[4] The cases with sufficient evidence to reach the jury generally exhibited some acute physical or psychological manifestation of the distress. *See Smith*, 851 N.W.2d at 30–31.