# IN THE COURT OF APPEALS OF IOWA

No. 20-0316
Filed December 16, 2020

**ANDRE RUBY,**
        Plaintiff-Appellant,

**vs.**

**CENTRAL COMMUNITY HOSPITAL,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Clayton County, John J. Bauercamper, Judge.


        Andre Ruby appeals the grant of summary judgment in favor of Central Community Hospital on his wrongful-discharge claim. **AFFIRMED.**


        Nathan J. Schroeder and Erich D. Priebe of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, P.L.C., Waterloo, for appellant.

        Jo Ellen Whitney, Kelsey K. Crosse, and Katelynn T. McCollough of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee.


        Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

Andre Ruby appeals the grant of summary judgment in favor of his former employer, Central Community Hospital (CCH), on his wrongful-discharge claim. He claims he was fired in retaliation for reporting wrongdoing at CCH.

CCH is an Iowa nonprofit corporation doing business in Elkader. Ruby worked for CCH in the position of "EMS Manager-Paramedic." Ruby testified that, during his time with CCH, he became aware that a specific physician committed inappropriate actions as follows: (1) the physician instructed a nurse to give medication to a patient's wife but bill the medication to the patient; (2) the physician improperly altered a patient's medical record; and (3) another employee reported to Ruby that the physician failed to complete numerous medical charts. Ruby reported all three actions to leadership at CCH. After Ruby's report, CCH suspended Ruby based on insubordination and later terminated his employment.

Ruby filed a petition alleging CCH wrongfully discharged him in violation of public policy.[1] Regarding the source of the public policy, the petition alleged:

> In particular, the state and federal False Claims Acts prohibit employers from retaliating against employees who oppose or attempt to stop fraudulent practices, including those who refuse to engage in such fraudulent practices and those who report such activities internally. Further, it is a policy under the federal Health Insurance Portability and Accountability Act [(HIPAA)] that an

---

[1] Ruby's petition actually asserted two causes of action. Count I asserted a claim for retaliatory discharge in violation of public policy. Count II asserted a claim for retaliatory discharge in violation of the federal and state false claims acts. CCH sought summary judgment on both counts. At the hearing on the motion for summary judgment, Ruby conceded he failed to comply with the statutory requirements for asserting his claims under the false claims acts and, therefore, summary judgment in favor of CCH was appropriate on Count II. The district court granted summary judgment on both counts. Ruby appeals the granting of summary judgment on Count I, but he does not challenge the grant of summary judgment to CCH on Count II.

employee should not face adverse consequences for disclosing conduct on the part of a HIPAA-covered entity which the employee believes in good faith is either unlawful or violates professional or clinical standards or which endangers one or more patients, workers, or the public.

(Citations omitted.)

The district court granted CCH's motion for summary judgment and dismissed Ruby's petition. The district court found Ruby could have pursued statutory remedies for his claims of wrongful discharge, which prevents him from pursuing a common law claim of wrongful discharge in violation of public policy. Ruby filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) asking the court to reconsider, which the court denied.[2] Ruby now appeals.

We review a ruling on summary judgment for correction of errors at law. *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). "Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing Iowa R. Civ. P. 1.981(3)). "We view the summary judgment record in a light most favorable to the nonmoving party." *Id.*

---

[2] The district court's initial ruling focused on HIPAA and the false claims acts as potential sources of public policy. Ruby's resistance to summary judgment raised additional provisions of law as sources of public policy, and his rule 1.904(2) motion specifically addressed a whistleblower-protection statute and various privacy and licensing statutes and regulations. While the court's order denying Ruby's rule 1.904(2) motion did not address these additional statutes, we find Ruby's 1.904(2) motion preserved these provisions for our consideration. *See Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 751 (Iowa 2006). Any other provisions mentioned throughout this proceeding are not preserved for review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

In order to prevail on a claim of wrongful discharge in violation of public policy, Ruby must prove:

> (1) existence of a clearly defined public policy that protects employee activity; (2) the public policy would be jeopardized by the discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason for the employee's discharge; and (4) there was no overriding business justification for the termination.

*Jasper v. H. Nizam, Inc.*, 764 N.W.2d 751, 761 (Iowa 2009). Ruby's claim turns on the first element, the "existence of a clearly defined public policy." *Id.* Sources of public policy may include statutes and administrative regulations. *Id.* at 762–64. To support the tort, the source must "state a clear and well-defined public policy." *Id.* at 764.

Ruby cites several provisions of law as sources of public policy to support his wrongful-termination claim: (1) the federal and state false claims acts[3]; (2) Iowa's "whistleblower" statute[4]; and (3) HIPAA and related federal and state statutes and regulations.[5] We address these three categories of claimed sources of public policy separately.

Ruby asserts the federal and state false claims acts provide a source of public policy. However, these statutes provide for a civil cause of action for persons discharged for reporting false-claims violations. *See* 31 U.S.C. § 3730(h) (2017); Iowa Code § 685.3(6) (2017). "[W]hen a civil cause of action is provided

---

[3] *See* 31 U.S.C. §§ 3729–33; Iowa Code ch. 685.
[4] *See* Iowa Code § 70A.29.
[5] *See generally* Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (codified in scattered sections of 18, 26, 29, and 42 U.S.C.); 45 C.F.R. § 164.502(a); Iowa Code chs. 148, 272C; Iowa Admin. Code r. 653-13.7(3).

by the legislature in the same statute that creates the public policy to be enforced, the civil cause of action is the exclusive remedy for violation of that statute." *Ferguson v. Exide Techs., Inc.*, 936 N.W.2d 429, 435 (Iowa 2019). Therefore, Ruby cannot rely on either of the false-claims statutes to provide public policy to support his claim.

Similarly, section 70A.29—a whistleblower-protection statute—does not support Ruby's claim, as it provides for a civil cause of action as well. *See* Iowa Code § 70A.29(3); *see also Worthington v. Kenkel*, 684 N.W.2d 228, 230 (Iowa 2004). Therefore, it fails for the same reason his false-claims act causes of action fail. *See Ferguson*, 936 N.W.2d at 435. Furthermore, section 70A.29 protects persons employed by a political subdivision of the state, so it does not apply to Ruby's claim against CCH, a private nonprofit corporation.

As noted, Ruby also raises HIPAA and related regulations and statutes as sources of public policy. "Under HIPAA regulations, a covered entity generally is not permitted to use or disclose protected health information." *In re A.M.*, 856 N.W.2d 365, 379 (Iowa 2014); *see also* 45 C.F.R. § 164.502(a) ("A covered entity or business associate may not use or disclose protected health information . . . ."); Iowa Admin. Code r. 653-13.7(3) ("A physician shall maintain the confidentiality of all patient information obtained in the practice of medicine."); *see generally* Iowa Code chs. 148 (controlling "medicine and surgery and osteopathic medicine and surgery"), 272C (controlling "regulation of licensed professions and occupations"). HIPAA regulations prohibit covered entities from retaliating against persons who file a HIPAA complaint, participate in a HIPAA investigation, or generally oppose any action by the covered entity that would violate HIPAA. 45 C.F.R. § 160.316.

The federal Department of Human Services is typically responsible for enforcing violations of HIPAA. 42 U.S.C. § 1320d-5; *see also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPAA does not create a private right of action."). Even if we were to find HIPAA espouses a public policy that could support a wrongful-termination claim, however, Ruby has not asserted facts that would support a finding his termination violated this public policy. Ruby testified he reported three incidents of fraud or otherwise poor medical recordkeeping, but none of these incidents relate to the unauthorized use or disclosure of protected health information. Ruby testified he knew another employee reported to CCH that the physician committed a HIPAA violation. However, Ruby acknowledged he did not witness or report that violation or any other HIPAA violation, and the record contains no indication his termination was in any way related to a HIPAA violation. Therefore, HIPAA or related confidentiality regulations or statutes cannot be a source of public policy to support Ruby's wrongful-discharge claim.

We find no error in the district court's conclusion that Ruby failed to articulate a public policy that would protect his discharge from CCH. Therefore, we affirm the grant of summary judgment in favor of CCH.

**AFFIRMED.**