# IN THE COURT OF APPEALS OF IOWA

No. 23-1507
Filed May 7, 2025

IN RE THE MARRIAGE OF DAVID ARTHUR CHRISTIANSEN
AND CONSTANCE JOAN SPENCER

Upon the Petition of
DAVID ARTHUR CHRISTIANSEN,
        Petitioner-Appellee,

And Concerning
CONSTANCE JOAN SPENCER,
        Respondent-Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Jeffrey L. Larson, Judge.

A respondent appeals the property-division and spousal-support provisions of the decree dissolving the parties' marriage. **AFFIRMED AS MODIFIED.**

P. Shawn McCann of McGinn, Springer & Noethe, P.L.C., Council Bluffs, for appellant.

Krisanne C. Weimer of Weimer Law, P.C., Council Bluffs, for appellee.

Considered without oral argument by Badding, P.J., Langholz, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**LANGHOLZ, Judge.**

David Christiansen and Connie Spencer were both in their sixties when they married. About halfway through the roughly eleven-year marriage, Spencer started showing signs of cognitive decline. She was eventually diagnosed with Alzheimer's disease, requiring more day-to-day help. And in 2022, Christiansen petitioned to dissolve the marriage. The parties disputed how to equitably divide their property and whether Spencer should receive traditional spousal support. Following trial, the district court largely awarded each party their premarital property, though it equally divided their checking accounts and the marital growth on their investment and retirement accounts, resulting in a $61,306.50 equalization payment to Spencer. The court declined to award Spencer spousal support given the marriage's relatively short duration and Spencer's assets. Spencer appeals.

We agree with Spencer in one respect—she should have been credited for the significant improvements made to the Council Bluffs home during the marriage. So we modify the decree to increase Christiansen's equalization payment to Spencer by $24,000 to account for her contributions toward improving that home. But on the remaining issues, we affirm the district court's decree. We find it equitable for Christiansen to retain the proceeds of selling his business very early in the marriage, the retirement and investment accounts were fairly divided, and Spencer failed to preserve error on any excess funds set aside for income taxes. As for spousal support, Spencer leaves the marriage with significant assets and income and has not shown that this is the exceptional case justifying traditional spousal support so far outside the general twenty-year durational threshold. Finally, we decline Christiansen's request for appellate attorney fees.

## I.       Factual Background and Proceedings

Christiansen and Spencer first met in grade school and reunited later in life. They started dating around 2008—when he was sixty-three and she was sixty-five. They married in November 2011.  It was the second marriage for both.  And they both have children and grandchildren from those prior marriages.

When they married, Spencer was retired and Christiansen was still working at his family-run burger and ice cream shop—Christy Creme—which he bought from his parents in 1976.  He sold the business to his daughter and son-in-law in early 2015 and then retired.  In retirement, each party received social security and investment income.  The couple lived in Christiansen's Council Bluffs home—right next to Christy Creme—throughout the marriage and put Spencer's Omaha home in a living trust.  One of Spencer's sons periodically lived in the Omaha home, and the couple did not charge him rent.

Around 2016 or 2017, Spencer started showing early signs of cognitive decline.  By 2019, Christiansen tried to enroll her in adult daycare.  But Spencer did not enjoy going and her sons were concerned that the facility was not providing adequate care, so that was short lived.  Spencer was eventually diagnosed with Alzheimer's and required more care throughout the day.   In early 2022, Christiansen, with the help of Spencer's son, Brian,[1] arranged for in-home assistance a few times a week, which helped Spencer with medication, exercise, and other home tasks.  Those services cost roughly $1500 per month, which was paid from Spencer's separate checking account.

---

[1] Brian was appointed Spencer's agent through a durable power of attorney.

In August 2022, Christiansen petitioned to dissolve the marriage. Brian then helped Spencer move back into the Omaha home, where she now lives with her other son and his girlfriend. Both sons have assumed caretaking roles for Spencer and anticipate needing to transition her into an assisted living facility in the future.

The dissolution proceeded to a one-day trial in May 2023, where Christiansen, Spencer, and Brian testified. The primary disputes between the parties were whether or how to divide certain property and whether Christiansen should pay $1600 in traditional spousal support to Spencer. The district court later issued a decree dissolving the marriage. Relevant here, the court largely awarded each party their premarital property. But it equally divided their checking, savings, and certificate-of-deposit accounts, and the marital growth on their retirement and investment accounts. And it credited Spencer for her contributions toward the 529 accounts for Christiansen's grandchildren.[2] To effectuate the final division, the decree ordered Christiansen to make an equalization payment of $61,306.50. The court declined to award Spencer any spousal support, reasoning the roughly eleven-year marriage and each party's "substantial property" award made any ongoing support inappropriate.

Spencer unsuccessfully moved to reconsider. And she now appeals, challenging the property-division and spousal-support provisions of the decree.

---

[2] In her briefing, Spencer repeatedly asserts that the court "automatically exclude[d] all premarital property owned by the parties." But the court considered each disputed property and allocated it in the manner it deemed equitable. We see no basis in the record to support Spencer's belief that the disputed properties were categorically excluded from division.

## II.     Property Division

We review a decree's division of property de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). When dissolving a marriage, courts "shall divide all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21(5) (2022). We will only disturb a decree's division when it fails to do equity, and what is equitable "depends upon the circumstances of each case," as guided by the factors in Iowa Code section 598.21(5). *Hansen*, 733 N.W.2d at 702. And "[a]n equitable division is not necessarily an equal division." *Id.* On appeal, Spencer disputes four aspects of the property division, and we address each in turn.

*Council Bluffs Home.* The decree awarded each party the real estate they entered the marriage with—giving Christiansen the Council Bluffs home, valued at $268,700, and Spencer the Omaha home, valued at $235,000. Spencer argues this distribution is inequitable because the Council Bluffs home was their marital home, their marriage was of long duration given their ages, and they spent thousands of marital dollars making improvements. So she argues that the full value of the home should have been divided between them, or, at least, she should be credited for her contributions toward improving the home.

Christiansen mainly argues that the Council Bluffs home was not marital property subject to distribution because after they married, he and Spencer jointly conveyed the Council Bluffs home to him alone through a warranty deed. And in that deed, Spencer "relinquishe[d] all rights of dower, homestead and distributive share in and to the real estate," so he argues that she waived any interest in the home in a future dissolution. But no interest in property owned by a wife or

husband "can be the subject of contract between them." Iowa Code § 597.2. Thus, we will not construe that postmarital warranty deed to definitively alter the scope of marital property subject to division, even assuming the deed's language could otherwise do so. *See In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *4–6, *17 (Iowa Ct. App. Oct. 10, 2018) (explaining "our legislature has not authorized postnuptial agreements to control or bind the award of property or spousal support in a dissolution action," with two judges opting to consider the unenforceable agreement as merely one factor under section 598.21(5), and one judge finding the postnuptial agreement void and thus not considerable).

Turning to the equities, Spencer contributed toward improving the Council Bluff's home during the marriage. At trial, Christiansen acknowledged the couple spent $13,000 on painting, drywall repair, and plumbing; $8000 or $9000 on a master bathroom remodel; $10,000 on kitchen countertops; and about $10,000 to elevate the settlement for an addition. There were other projects that he could not recall the sums for, but he agreed relandscaping was a "substantial expense," and they also replaced the home's air conditioning and furnace. On appeal, Spencer conservatively estimates that $48,000 of marital funds were spent improving the home. And as for Spencer's Omaha home, Christiansen acknowledged that "very little money" was spent improving that property during the marriage.

Given this evidence, even if the deed suggests some intent for Christiansen to retain the Council Bluffs home, Spencer should be credited for her contributions toward improvements. *Cf. In re Marriage of Thomas*, 319 N.W.2d 209, 211 (Iowa 1982) (considering "contributions of the parties toward the property, its care, preservation or improvement" when deciding whether it is equitable to divide

property that is otherwise outside the scope of marital property). Finding Spencer's estimate reasonable based on the evidence, we modify the decree to increase Christiansen's equalization payment to Spencer by $24,000 to a modified amount of $85,306.50. And with that increase, awarding the Council Bluff's home to Christiansen is equitable under the circumstances.

*Proceeds from Selling Christiansen's Business.* When Christiansen sold Christy Creme to his daughter and son-in-law, the terms of the sale provided they would make installment payments to Christiansen over time, totaling $230,000. By the dissolution trial, he was still owed about $77,000 from the sale. The decree awarded all remaining proceeds of the sale to him.

Spencer argues that the proceeds of the sale funded their marital lifestyle, so she should have received some of the remaining proceeds. But we find this allocation equitable. Christiansen and his first wife ran the business together from 1976 to 2004, when she passed away. He continued to run it himself until 2015, selling it only a few years after he and Spencer married. And it is undisputed Spencer did not participate in the business during the marriage.[3] Because she did not assist with the business or otherwise contribute to its sale value, the court equitably awarded the remaining proceeds to Christiansen.

*Retirement and Investment Accounts.* Both Christiansen and Spencer brought retirement and investment accounts to the marriage. Addressing these

---

[3] Spencer offered no evidence during trial that she assisted with or participated in the business during the marriage, except for assisting with one charity event. For the first time in her motion to reconsider, she argued that she supported by the business through various tasks. But parties may not "use a rule 1.904(2) motion to introduce new evidence." *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015). So we do not consider those assertions.

accounts was "the most difficult" issue for the district court, as both parties failed to provide statements showing their account balances at the time they married. So the court was "tasked with identifying the gain on the accounts, which it can only do by extrapolation." Christiansen was able to provide account statements from 2013—two years after they married. So the court calculated the growth percentage for his retirement account (12.5%) and his stock account (25%) and estimated the growth of Spencer's accounts using those percentages. It found that those sums would "be considered the marital portion subject to equitable division." In all, the court calculated a "pre-tax sum of $134,289 subject to equitable division" and divided that sum equally between the parties.

Spencer argues the court erred by only dividing the marital growth on the accounts, rather than dividing the full balances of each account. But again, we find this division equitable. When they married, Spencer was already retired and Christiansen was near retirement. She did not contribute to her accounts during the marriage, and Christiansen only contributed until 2014, before he sold the business. So these accounts largely reflect premarital funds and contributions. Thus, we find it fair and equitable to only divide the marital growth on each account.

*Other Stock.* Spencer also disputes dividing the marital growth of her shares in six companies: Comcast, AT&T, Invesco, Janus, Lume, and Verizon. First considering Comcast, Spencer believes all of Christiansen's Comcast shares were in fact hers, which she inherited from her mother. Yet she failed to prove that fact at trial—Christiansen recalled Spencer inheriting some Comcast stock, but he also testified that he independently owned Comcast stock and his dividends were from those shares, not Spencer's. What's more, Spencer's evidence of comingling

is thin, as her son's efforts to track down Spencer's missing Comcast stock came up short—he did not "have anything that could show [him] any kind of account record." We generally leave these evidentiary disputes to the district court, as its "front-row seat to the live testimony" places it in a far better position to weigh credibility and resolve conflicting evidence. *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024). So, on this record, we see no basis to disturb the decree.

Spencer next argues that the $11,260 of marital growth in her shares of five companies—AT&T, Invesco, Janus, Lume, and Verizon—should not have been subject to division. She specifically asserts these shares were inherited from her mother, and because Christiansen's similarly inherited shares were not subject to division, the decree treated her unequally. But we see two problems with her argument.

First, the tax return for Spencer's mother's estate does not list any shares of Invesco, Janus, or Lume. So Spencer has not shown she inherited those shares. And second, Christiansen's inherited shares were indeed divided—at great benefit to Spencer. Christiansen's stock account was largely funded by inherited shares, though he also contributed some life insurance funds after his first wife's death. That stock account grew by twenty-five percent during the marriage, and all $137,750 of growth was equally divided between the parties. So while property inherited before a marriage is generally not subject to division, a court may do so when failing to divide would result in inequity to the other party. *See* Iowa Code § 598.21(6). That happened here—Spencer's shares of AT&T and Verizon were not carved out, but neither were Christiansen's inherited shares within his stock account, which resulted in Spencer receiving substantially more

through an equalization payment than she would have if those shares were excluded from division. Because allowing Spencer to benefit from Christiansen's stock account growth while also excluding her AT&T and Verizon shares would be inequitable to Christiansen, we again affirm the decree's division.

*Income Tax Funds.* Finally, Spencer argues that Christiansen set aside $10,000 of marital funds for income taxes that were ultimately never used, and those funds should have been divided as marital property. But the decree does not address these funds, nor did Spencer request a ruling on the funds in her motion to reconsider. So Spencer has not preserved this issue for appeal. *See Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 751 n.4 (Iowa 2006).

### III.    Spousal Support

Spencer next argues the court erred by not awarding her traditional spousal support of $1600 per month until death or remarriage. "Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case." *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022). We consider many factors when assessing spousal support, including the marriage's length, the health and age of the parties, and the results of any property division. *See* Iowa Code § 598.21A(1)(a)–(j). "While the length of the marriage is an important consideration in awarding traditional support, it is not the only consideration under our statutory framework." *Mills*, 983 N.W.2d at 70. Indeed, we may also consider "a spouse's disability suffered during the parties' marriage." *Id.* at 71. At bottom, the goal of spousal support "is to do equity." *Id.* (cleaned up).

Spencer, relying heavily on *Mills*, argues traditional spousal support is equitable because she entered the marriage in good health, suffered a disability that impacts her ability to be self-sufficient, and the marriage lasted more than ten years. Christiansen responds that Spencer retired before entering the marriage, so this is not a circumstance of diminished earning capacity. He also points to Spencer's assets upon departing the marriage and her income from social security and investment accounts, which the district court found sufficient to cover her future expenses.

To start, Spencer places more weight on *Mills* than the case allows. There, our supreme court awarded $400 in traditional spousal support to a spouse who suffered a permanent disability while giving birth to the couple's only child. *Id.* at 65, 73. The spouse was in her late twenties when she became disabled and the marriage lasted fourteen years. *Id.* at 70. The court explained "[w]hen one spouse enters the marriage in good health and with an established earning capacity, then suffers a permanent disability during the marriage that renders the spouse unable to work and impacts the spouse's ability to be self-sufficient," courts may consider "the spouse's disability" to remedy any "resulting financial inequities." *Id.* at 71. So although the length of the marriage "was not close to meeting the typical durational threshold," *In re Marriage of Sokol*, 985 N.W.2d 177, 186 (Iowa 2023) (cleaned up), the spouse's disability suffered while birthing their only child, among other factors, tipped the balance of equities in favor of traditional spousal support. *Mills*, 983 N.W.2d at 72–73. Still, the court cautioned that "only disabilities that substantially reduce a spouse's earning capacity and feasibility of self-

support . . . will generally warrant consideration in the determination of whether to award traditional support." *Id.* at 71.

This case is distinguishable. For starters, the marriage lasted roughly eleven years—three years shorter than in *Mills* and far short of the typical twenty-year threshold for traditional spousal support. *See In re Marriage of Gutcher*, No. 17-0593, 2018 WL 5292082, at *3–4 (Iowa Ct. App. Nov. 7, 2018) (declining to award spousal support to spouse who suffered disability during the parties' thirteen-year marriage). What's more, Spencer retired before she married Christiansen, so unlike in *Mills*, she did not suffer an unexpected loss in earning capacity due to the disability, as she was already out of the workforce. And also unlike the spouse in *Mills*, Spencer is leaving the marriage with assets and income to support herself—she owns the Omaha home, valued at $235,000; she received the 2016 Acura, valued at $25,340, although she no longer drives; she will receive roughly $85,000 through an equalization payment, per the modification within this opinion; she receives $2,076.21 per month in social security; she has two IRAs valued at roughly $105,000 at the time of trial; and she also has various stock accounts. So too is Christiansen already retired and without any earned income, unlike the paying spouse in *Mills. See Mills*, 983 N.W.2d at 66, 71; *see also In re Marriage of Gust*, 858 N.W.2d 402, 412–14 (Iowa 2015) (discussing the impact of retirement on a traditional-spousal-support award).

We also find it significant that Spencer's requested $1600 is based on the estimated cost of in-home assistance similar to what she received during the marriage. But it is undisputed Spencer paid for that in-home assistance with her own funds during the marriage—Christiansen did not contribute. While Spencer

will have other expenses now that the marriage is dissolved, she currently does not charge her son any rent to live in her home, and instead her son and his girlfriend assist with her care, pay for utilities, and provide much of her food in lieu of rent. Given that arrangement, and Spencer's assets and income upon departing the marriage, Spencer has not shown that this is the exceptional case warranting traditional spousal support so far outside the general twenty-year durational threshold. We thus affirm the district court's denial of traditional spousal support.

## IV. Appellate Attorney Fees

Christiansen asks for an award of appellate attorney fees and helpfully submitted an attorney-fee affidavit supporting his request. *See In re Marriage of Samuels da Fonseca Silva*, 15 N.W.3d 801, 808 (Iowa Ct. App. 2024) (expressing our preference "that parties requesting appellate fees do so in their briefs and submit an attorney-fee affidavit immediately after oral argument or after the case is submitted without oral argument"). We have discretion whether to award appellate attorney fees in an appeal of a dissolution decree. *See id.* In exercising that discretion, "we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (cleaned up). Considering these factors, including Spencer's partial success on appeal and the parties' respective abilities to pay, we exercise our discretion to deny Christiansen's request for appellate fees. Appellate court costs shall be assessed equally to the parties.

**AFFIRMED AS MODIFIED.**