IN THE COURT OF APPEALS OF IOWA

No. 24-0778
Filed July 2, 2025

BRIAN HAGER,
        Plaintiff-Appellant,

vs.

M & W WELDING, INC., COLTON BEALS, JACOB RHOADES and BENJAMIN
ANDREW GUY ST. LAWRENCE,
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Monroe County, Crystal S. Cronk,

Judge.


        Brian Hager appeals several district court rulings that improperly denied him

the opportunity to present a hostile work environment claim to a jury.  **REVERSED**

**AND REMANDED.**


        Clinton Luth (argued) and Benjamin Bergmann of Parrish Kruidenier L.L.P,

Des Moines, for appellant.

        Alison F. Kanne (argued) of Wandro, Kanne & Lalor, P.C., Des Moines, for

appellees.


        Heard at oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SANDY, Judge.**

Was a hostile work environment claim pled? The answer to this question leads to the resolution of this appeal. Brian Hager appeals two rulings of the district court that effectively deprived him of the opportunity to present a hostile work environment claim to a jury. He contends he sufficiently pled a hostile work environment claim in his petition. Thus, he argues the district court erred by denying his request for jury instructions on that claim. Alternatively, he asserts the district court abused its discretion in denying his pretrial motion to amend his petition and motion to conform to proof to "add" a hostile work environment claim.

Because we conclude Hager's petition sufficiently pled a hostile work environment claim, we conclude the district court's ruling on his pretrial motion to amend improperly denied him the opportunity to move forward to trial with such a claim. Accordingly, we find Hager is entitled to a new trial on a hostile work environment claim. And because we find this issue to be dispositive, we do not reach Hager's alternative arguments.

## I. Background Facts and Proceedings

In March 2021, Hager was hired as a painter at M&W Welding, Inc. (M&W)—a small welding shop in Moravia that specializes in building hay trailers. Colton Beals is the owner and primary operator of M&W. When he was initially hired, Beals and his coworkers were unaware that Hager identifies as a black man. Hager is biracial, testifying at trial that he is "black and white."

According to Hager, upon discovering his race, Beals and two of his coworkers began engaging in a consistent and pervasive pattern of harassment. Shortly after discovering his race, Beals allegedly told Hager that his lips were big

because he "was sucking on [his] mother's gorilla nipples." Not long after making this remark, Beals purportedly began referring to Hager's children as "[f]ucking n***lets." Hager also alleged that Beals once pointed a firearm at him and said, "[h]ow about you get back to work, you fucking n****r."

According to Hager, two of his coworkers gradually began to join in on the harassment. One of his coworkers—Jacob "Tanner" Rhoades—allegedly frequently referred to Hager as a "fucking n****r" and called his children "half-breeds." Another co-worker—Benjamin St. Lawrence—allegedly frequently referred to Hager as a "n****r." As Hager explained at trial, "It's like they were comfortable with it—like, comfortable throwing that word out freely." He also claimed that Beals and his coworkers made sexually explicit and racially insensitive comments about his wife, who is white. Hager claimed that he reported his discomfort with the alleged harassment "multiple times" to Beals, but his complaints fell on deaf ears. In fact, he alleged that Beals defended his, Rhoades, and St. Lawrence's use of racial slurs and epithets, referring to this language as "shoptalk" or "guy talk."

But the alleged harassment went beyond just the use of racial slurs, epithets, and derogatory remarks targeted at Hager, his wife, and children. Hager purported that his coworkers would frequently throw things at him while he was working. Additionally, his coworkers allegedly destroyed his workstation and protective equipment numerous times while he was employed with M&W. One day, when Hager left his workstation to go to the bathroom, he allegedly returned to find a swastika painted on his workstation. Further, he claimed Beals once made him paint the symbol of the Schutzstaffel—the infamous Nazi paramilitary group—

on a customer's trailer. When the customer picked up the trailer, Hager asserted that Beals told the customer he had "the n****r paint it."

Due to the alleged daily harassment he was subjected to at M&W, Hager would often leave work early and search for reasons to call in sick. He also claimed to experience anxiety attacks at work that were attributable to the harassment. In December 2021, Hager began exploring the possibility of filing a legal complaint against M&W with the Iowa Civil Rights Commission.[1] On December 16, he met with Beals and discussed his displeasure with the working environment at M&W. A few days later, on December 20, he was terminated by Beals via voicemail. Beals claimed at trial that he terminated Hager because he discovered Hager had attempted to allegedly bribe several employees to testify for him and against the company in a legal action.

On October 3, 2022, Hager filed a civil petition naming M&W, Beals, Rhoades, and St. Lawrence as individual defendants. Of importance, many of the factual allegations discussed above were contained in the petition. Against each defendant, he asserted explicit[2] claims of race discrimination, disability discrimination, and retaliation under Iowa Code chapter 216, as well as a claim for defamation. Against M&W and Beals, he asserted a common law retaliatory discharge claim. Against Beals, he asserted an assault claim. And finally, against Rhoades and St. Lawrence, Hager asserted a claim for aiding and abetting a

---

[1] One of the discriminatory actions alleged in the complaint Hager filed with the Iowa Civil Rights Commission was "harassment."

[2] By explicit, we mean these claims were pled as a separate counts under separate headings.

violation of chapter 216. Of relevance to this appeal, Hager's petition did not include a separate explicit count for a hostile work environment claim.

In June, the district court entered an order setting trial for April 9, 2024. On March 29, eleven days before trial, Hager filed a set of proposed jury instructions. In his proposed jury instructions, Hager included four instructions that related to a hostile work environment claim. On April 2, the defendants filed a response to Hager's proposed jury instructions, arguing that his proposed instructions relating to a hostile work environment claim should be struck and omitted because he "chose not to plead causes of action for workplace harassment/hostile work environment either by a co-worker or by a supervisor."

In response, Hager filed a pretrial motion to amend his petition to add a hostile work environment claim on April 7. The defendants filed a resistance to this motion, again arguing that Hager never pled a hostile work environment claim. Prior to trial commencing, the district court addressed the issue of Hager's pretrial motion to amend.[3] In advocating for granting the motion to amend the petition, Hager's counsel argued:

> Your Honor, I believe that our motion and our resistance speak for themselves. However, there are a few points that I do want to address.
> First of all, it is our contention, and it is according to Iowa's rule of pleading the case, that a hostile work environment claim has always been part of Mr. Hager's claims against Beals and the other defendants.
> As noted in our resistance, in order to state a claim clear enough for an opponent, all that's required is to identify all the prima facie elements.
> As noted, paragraphs 16 through 21 of our initial petition served in October 2022 lay out the framework of an objectively

---

[3] During a discussion on his motion to amend, Hager agreed to voluntarily dismiss his claims of disability discrimination and defamation against all defendants.

severe, pervasive, and hostile work environment. Paragraph 22 identifies that our client complained of this on a weekly basis therefore providing notice of the hostile work environment, and the remaining paragraphs noted in our resistance lay out the other elements of a hostile work environment claim.

This is all that is required to raise the issue and make it part of the packet of claims that Mr. Hager has advanced against the defendants in this case.

It was only on April 2nd, during preparation of jury instructions, that Defendants first raised the legal theory that a hostile work environment claim had never been [pled]. This came about when they objected to the jury instructions that we submitted on March 29, including a hostile work environment instruction.

Based on that late-coming theory of defense, we were sort of put on the horns of a decision. Either we can go ahead and file a Motion to Amend and allow the defendants an opportunity pretrial to attempt to resolve the issue, or we can—and still can—amend our petition at the end of evidence to conform with the proof submitted.

In response, counsel for the defendants argued:

First of all, I would say this is not a late-coming theory of defense. We have always been aware that's there never been a claim for a hostile work environment, and that is how we prepared our defense.

Using the words in the petition does not mean that they asserted a claim for a hostile work environment. There are different defenses that we would make. There are different avenues that we would have explored in discovery, and the elements that they're required to prove are different.

It requires pervasiveness. It requires Mr. Beals to have known about it and not to have done anything about it. Just because some of the facts are similar between these two different claims does not mean that they alleged a claim for a hostile work environment. This is not a late-coming theory of defense.

In fact, this came up when—I was surprised when I saw the plaintiff's proposed jury instructions for a hostile work environment, and I said, "You don't have a claim for hostile work environment." That appears to be the first time the plaintiff actually realized that they didn't have a claim for a hostile work environment.

The law is clear, Your honor. In the reply that I filed this morning, the Iowa Supreme Court has conclusively ruled that racial discrimination and a hostile work environment are quote, "fundamentally different claims." And because they are fundamentally different claims, they cannot shoehorn this claim in on the eve of trial and try to say, "Well, they've known about it." Well, we haven't, and we would have done different things in our defense

had we known that they were actually intending to bring a claim for a hostile work environment.

Ultimately, the district court sided with the defendants, ruling that the motion to amend was untimely and would cause prejudice to the defendants because claims of race discrimination and a hostile work environment are "fundamentally different." The rest of Hager's recognized claims proceeded to trial. During trial, the district court heard extensive testimony from Hager, Beals, Rhoades, St. Lawerence, and several other coworkers of Hager during his employment at M&W.

At the close of evidence, Hager again moved to amend his petition to conform to the proof to add a hostile work environment claim. In advocating that this motion be granted, counsel for Hager asserted:

> We have, through the testimony of Mr. Hager and through the testimony of Mr. Beals, demonstrated all the elements of [a] hostile work environment claim.
> In fact, I copied them from Defendants' brief. The elements were: was the defendant subjected to offensive conduct, the conduct was unwelcome, the conduct was based on the plaintiff's race or color, the conduct was sufficiently severe or pervasive that a reasonable person in the plaintiff's position would find his work environment to be hostile or abusive, at the time the conduct occurred and as a result of such conduct, Mr. Hager believed his work environment was hostile or abusive; Mr. Beals knew or should have known the conduct; and that he failed to take steps to correct the situation and/or prevent the offensive conduct from occurring.
> This has been proven up through Mr. Hager's testimony and almost all of the elements through Mr. Beals testimony.
> We move to amend to conform with the evidence.

The district court denied Hager's motion to amend his petition to conform to the proof, stating, "I'm not going to allow that amendment. Those are different claims with different elements, and it would be prejudicial to the defense to allow that amendment at this time." Consequently, a marshalling instruction for a hostile work environment claim was never presented to the jury. Ultimately, Hager's

claims of race discrimination and retaliation against each defendant, aiding and abetting against Rhoades and St. Lawrence, common law retaliatory discharge against M&W and Beals, and assault against Beals were submitted to the jury. The jury returned not guilty verdicts on each claim.

This appeal followed.

## II.     Standard of Review

Our standard of review for refusal to give a requested jury instruction is for "correction of errors at law." *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). We review the district court's denial of a party's motion to amend, including a motion to amend to conform to the proof, for an abuse of discretion. *In re Est. of Workman*, 903 N.W.2d 170, 175 (Iowa 2017); *Holliday v. Rain & Hail L.L.C.,* 690 N.W.2d 59, 63 (Iowa 2004).

## III.     Analysis

### A. Error Preservation

Before reaching the merits of Hager's contention that the district court erred in denying his request for a jury instruction for a hostile work environment claim, we pause to consider whether he preserved error on this issue. The defendants claim that he did not. Although they acknowledge Hager submitted proposed jury instructions covering a hostile work environment claim, they note he never objected to the instructions given to the jury at trial. Consequently, they believe Hager failed to preserve error. *See Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007) ("[E]rror in jury instructions is waived if not raised before closing arguments are made to the jury.").

Hager believes he did preserve error on this issue. He claims the district court ruled on his proposed instructions, and "likewise made any further objection futile by refusing to allow [him] to even make a claim for a Hostile Work Environment." He claims this is so because "the District Court ruled—incorrectly— that [he] had not pled a hostile work environment claim." In his view, this effectively constituted a ruling that he was not entitled to hostile work environment jury instructions. Thus, he contends "it would have been futile to repeatedly request jury instructions on a hostile work environment" when the district court "made it clear" he would not be entitled to such instructions. In such situations, he asserts no additional action is required to preserve error. We find Hager's argument more persuasive, although for slightly different reasons.

To begin, we disagree with Hager that the district court explicitly ruled on his proposed jury instructions relating to a hostile work environment claim. We find no support for this contention in the record. But more importantly, while Hager frames this issue as an inappropriate refusal to give requested jury instructions by the district court, we believe the thrust of his argument is that the district court effectively determined that he had never pled a hostile work environment claim. In other words, the issue is not that Hager did not receive jury instructions for a hostile work environment, it is that his hostile work environment claim was effectively dismissed by not allowing the claim to move forward. For this reason, defendants rule 1.924[4] error preservation argument is inapplicable. During arguments at the

---

[4] Iowa Rule of Civil Procedure 1.924 provides that, "before arguments to the jury . . . , all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter

beginning of trial on his motion to amend his petition, Hager expressly argued that he had properly pled a hostile work environment claim.

By denying Hager's pretrial motion to amend his petition, the district court effectively ruled that he had never pled a hostile work environment claim. In ruling on Hager's pretrial motion to amend his petition, the district court noted the "fundamentally different" elements of a racial discrimination claim and a hostile work environment claim. The court also stated that it would be prejudicial to the defendants to allow him to amend his petition to add a hostile work environment claim.

The import of these statements is that they indicate the district court believed a hostile work environment claim had never been pled by Hager.[5] Consequently, we conclude the district essentially ruled that a hostile work environment claim had never been pled when it ruled on Hager's motion to amend. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the reasoning is 'incomplete or sparse,' the issue has been preserved." (citation omitted)). Thus, because we believe Hager is arguing the district court improperly determined that he never pled a hostile work environment claim, we believe he preserved error on this issue.[6]

---

objected to and on what grounds." After that, such objections may not be "asserted . . . or considered on appeal." Iowa R. Civ. P. 1.924.

[5] The district court made similar statements when it ruled on Hager's motion to conform to the proof.

[6] Even if we considered Hager's argument on this issue to truly be a jury instruction argument, we would still conclude that he preserved error. By denying his pretrial motion amend, the district court effectively ruled that a hostile work environment claim had never been pled. In order to receive a jury instruction, the jury instruction

**B. Merits**

As discussed above, we interpret Hager's jury instruction argument to really be an argument that the district court erred in determining that he never pled a hostile work environment claim. Hager contends "Iowa Courts do not require a particular form or format for civil actions." He argues all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the judgment for the type of relief sought." Iowa R. Civ. P. 1.403(1). He contends Count I of his petition ("Race Discrimination") set forth all of "his claims based on his race." He argues paragraphs sixteen through forty-eight of his petition, which were incorporated under Count I, clearly set forth the basic elements of a hostile work environment claim. Thus, he claims he "expressly pled a hostile work environment claim by any measure of Iowa's pleadings rules."

The defendants counter that Hager only included a race discrimination claim in his petition. The defendants repeatedly note throughout their briefing that a hostile work environment claim is fundamentally different than a race discrimination claim. They note that the two claims require a plaintiff to prove different elements. Piggybacking off this last point, they also assert the defenses for a race discrimination claim are much different than the defenses applicable to a hostile work environment claim. Defendants contend that allowing Hager to

---

must provide the applicable law. *See Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994) (noting jury instructions must state the law applicable to the case). If a court determines that a claim has never been pled, such a claim would not be the law applicable to the case. Thus, it would be futile for a party to request a jury instruction on such a claim. In situations such as this, where the district court determines a claim was never pled at the outset of trial, we cannot fault a party for not requesting a jury instruction before the case is submitted to the jury.

inject a last-minute hostile work environment claim would have prejudiced them because they would have defended the case differently had they known such a claim had been asserted since the inception of the case.  We disagree.

To begin our analysis, it is helpful to discuss the distinction between race discrimination claims and hostile work environment claims brought under the Iowa Civil Rights Act (ICRA).   The ICRA prohibits employers "to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, sexual orientation, national origin, religion, or disability of such applicant or employee." Iowa Code § 216.6(1)(a) (Supp. 2025).  To establish a prima facie case of race discrimination under the ICRA, Hager must show "(1) he was a member of a protected group; (2) he was qualified to perform the job and was performing satisfactorily;   (3) he   suffered   an   adverse   employment   action;   and (4) circumstances permit an inference of discrimination."  *Gordon v. Wells Fargo Bank-Nat'l Ass'n*, No. 20-0447, 2021 WL 2135187, at *1 (Iowa Ct. App. May 26, 2021).   "Each discrete discriminatory act or event is separately actionable." *Farmland Foods, Inc.*, *v. Dubuque Hum. Rights Comm'n*, 672 N.W.2d 733, 741 (Iowa 2003).

However, our supreme court stated over twenty years ago that "claims of hostile work environment are fundamentally different."  *Id*.  "Unlike discrete acts of discrimination, they involve repeated conduct and are based on the cumulative impact of separate acts."  *Id*.  To establish a hostile work environment claim under the ICRA, "the plaintiff must show: (1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was

based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment." *Boyle v. Alum-Line, Inc.*, 710 N.W.2d 741, 746 (Iowa 2006) (citation omitted). "Additionally, if the harassment is perpetrated by a nonsupervisory employee, the plaintiff must show the employer 'knew or should have known of the harassment and failed to take proper remedial action.'" *Farmland Foods*, 672 N.W.2d at 744 (quoting *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000)). The harassment alleged must be sufficiently "severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Rheeder v. Gray*,___ N.W.3d. ___, ___, 2025 WL 1599759, at *7 (Iowa 2025) (citation omitted).

As there is no dispute that Hager pled a racial discrimination claim under the ICRA, we turn to the question of whether he also sufficiently pled a hostile work environment claim. To aid in our analysis, we briefly recount some general principles regarding Iowa's pleading standards. "Iowa is a notice pleading state." *Terrace Hill Soc'y Found. v. Terrace Hill Comm'n*, 6 N.W.3d 290, 296 (Iowa 2024) (citation omitted). Under the notice pleading standard, the "petition need not allege ultimate facts that support each element of the cause of action." *Id.* (citation omitted). A plaintiff is also not required to identify a specific legal theory in their petition. *Id.*; *see also Stessman v. Am. Black Hawk Broad. Co.*, 416 N.W.2d 685, 686 (Iowa 1987). "However, a petition must contain factual allegations that give the defendant fair notice of the claim asserted so the defendant can adequately respond to the petition." *U.S. Bank v. Barbour*, 770 N.W.2d 350, 354 (Iowa 2009) (cleaned up). "The 'fair notice' requirement is met if a petition informs the

defendant of the incident giving rise to the claim and of the claim's general nature."
*Id.* (citation omitted).

Applying these principles, we conclude that Hager sufficiently pled a hostile work environment claim. While it is not a model of clarity, when his petition is read in its entirety, it is evident that he is attempting to assert a hostile work environment claim against the named defendants. Hager's petition has detailed factual allegations covering the basic elements of a hostile work environment claim. His petition indicates that he is a black man, that he was subjected to unwelcomed harassment by the defendants, that the harassment was motivated by his race, and that he was denied "pay raises and promotions" based on the racial harassment he allegedly experienced. These factual allegations correspond directly to the prima facie elements of a hostile work environment claim. *See Boyle*, 710 N.W.2d at 746.

It is true that Hager's petition did not set out a separate heading/caption for a hostile work environment claim. But as Hager correctly points out, "[n]o technical forms of pleadings are required" under our rules. Iowa R. Civ. P. 1.402(2)(a). And a petition should not be defined by the labels it uses, "but is required to be read in light of the allegations and legal ramifications contained within the four corners." *Roush v. Mahaska State Bank*, 605 N.W.2d 6, 9 (Iowa 2000). Hager's detailed factual allegations alerted the defendants of the claim's general nature and the events giving rise to the claim. Thus, it satisfied the "fair notice" requirement under our pleading standards. *See U.S. Bank*, 770 N.W.2d at 354. If the defendants were unsure of every claim Hager was asserting in his petition, they had ample

opportunity over the course of this case to file a motion for a more specific statement. They declined to do so.

Ultimately, we find Hager's petition sufficiently pled a hostile work environment claim. The district court, to the extent its rulings on his pretrial motion to amend found otherwise, were in error. Thus, we conclude Hager is entitled to a new trial on a hostile work environment claim because the district court improperly denied him the opportunity to move forward to trial with such a claim.

## IV. Conclusion

In short, we conclude the district court's ruling on Hager's pretrial motion to amend his petition erroneously deprived him of the opportunity to have his hostile work environment claim tried to a jury. His petition sufficiently pled a hostile work environment claim under Iowa's notice pleading standards. Because of the district court's error in denying him the opportunity to move forward to trial on a hostile work environment claim, Hager is entitled to a new trial on this issue. We accordingly remand for a new trial on his hostile work environment claim. And because we find this issue dispositive, we do not reach Hager's alternative arguments regarding his pretrial motion to amend and motion to amend to conform to the proof at the close of evidence.

**REVERSED AND REMANDED.**